209 S.W.3d 708 (2006)
In the Matter of J.D.B., A Minor Child.
Nos. 14-05-00659-CV, 14-05-00660-CV.
Court of Appeals of Texas, Houston (14th Dist.).
November 7, 2006.
*709 Anna E. Stool, Houston, for appellant.
Michelle Traher, Houston, for appellee.
Panel consists of Justices ANDERSON, HUDSON, and GUZMAN.

OPINION
J. HARVEY HUDSON, Justice.
While serving a one year probated sentence for aggravated assault with a deadly weapon, J.D.B., a juvenile, was charged with unauthorized use of a motor vehicle. J.D.B sought to suppress evidence on the ground that the arresting officer did not have reasonable suspicion to stop his vehicle or any probable cause for his arrest. Thus, he claimed any resulting statements or evidence found or occurring after the initial detention were tainted and inadmissible. The trial court denied the motions to suppress. Thereafter, J.D.B stipulated to the evidence and entered a plea of guilty to the charge of unauthorized use of a motor vehicle. The conviction resulted in J.D.B. also being charged with violation of Rule 4 of his probation. The trial court entered judgment in each case and committed J.D.B. to the Texas Youth Commission. TEX. FAM.CODE ANN. § 54.04 (Vernon Supp.2006). In two issues, J.D.B. contends the trial court erred in denying his motions to suppress because: (1) the police officers did not have reasonable suspicion for an investigative detention of J.D.B., and (2) the officers did not have probable cause to arrest. We affirm.
*710 The Baytown Police Department received a suspicious activity call from Lois Linder, a resident of a trailer park. She reported that two white males, driving a white pickup truck, were parked behind her neighbor's trailer and were in the process of removing the license plate of the truck and replacing it with a different one. Officer Currie was dispatched to investigate the incident. The dispatcher also instructed Officer Almendarez to join him as backup. En route, Currie passed a white truck with two white males, matching the descriptions of the truck and the occupants, coming from the area of the trailer park. Currie instructed Almendarez to follow the truck while he proceeded to the trailer park to ascertain whether the truck was still on the premises. Upon being told by Linder that the truck had just left the trailer park, Currie notified Almendarez. Officer Almendarez then stopped the truck.
J.D.B. was driving the truck. When Almendarez asked him for his driver's license and insurance, he said "what." The officer repeated his question and J.D.B. said he did not have any  he was simply going to get gas. Almendarez then asked J.D.B to whom the truck belonged and J.D.B. again said "what." The officer repeated the question and J.D.B. said it was his friend's father's truck. When Almendarez asked for the identity of the friend, J.D.B. again said "what." At this point, Almendarez believed J.D.B. was being evasive in answering the questions and suspected he was driving the white truck seen by Linder. Officer Almendarez requested that J.D.B. exit the truck. Almendarez then handcuffed J.D.B. and stood with him at the back of the truck to wait for Officer Currie. The passenger remained in the truck.
Officer Currie joined Almendarez while a third officer brought Linder to the scene. Linder positively identified J.D.B., his passenger, and the truck as those she had seen in the trailer park. After running the plates, it was determined that the current plates were from a stolen vehicle, and the white truck was also stolen.
In his first issue, J.D.B. contends Officer Almendarez did not have reasonable suspicion to detain him. An investigative detention must be based on reasonable suspicion in order for the officer to lawfully seize a person. Davis v. State, 947 S.W.2d 240, 244 (Tex.Crim.App.1997). In other words, the officer must have a reasonable suspicion that the person detained actually is, has been, or soon will be engaged in criminal activity. Woods v. State, 956 S.W.2d 33, 35-38 (Tex.Crim. App.1997). Reasonable suspicion exists when there is "something out of the ordinary occurring and some indication that the unusual activity is related to crime." Viveros v. State, 828 S.W.2d 2, 4 (Tex. Crim.App.1992). The factual basis for stopping a vehicle need not arise from the officer's personal observation, but may be supplied by information acquired from another person. Brother v. State, 166 S.W.3d 255, 257 (Tex.Crim.App.2005). "When police receive information from a private citizen whose only contact with the police is a result of having witnessed a criminal act committed by another, the credibility and reliability of the information is inherent." Cornejo v. State, 917 S.W.2d 480, 483 (Tex.App.-Houston [14th Dist.] 1996, pet. ref'd).
In evaluating the requirements of reasonable suspicion, law enforcement officers are permitted to make certain common-sense conclusions about human behavior. United States v. Sokolow, 490 U.S. 1, 8, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). "Much as a `bright line' rule would be desirable, in evaluating whether an investigative detention is unreasonable, common *711 sense and ordinary human experience must govern over rigid criteria." United States v. Sharpe, 470 U.S. 675, 685, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). All fact situations are different, therefore, a fact specific, case by case analysis is required. Klare v. State, 76 S.W.3d 68, 73 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd).
To determine whether the police had reasonable suspicion to stop and detain J.D.B., we look at the facts the officers knew at the time. J.D.B. contends the officers' only information was a description of "a white pickup truck containing two white males." However, this statement ignores the officers' knowledge of other specific facts as shown by their testimonies. When Linder initially reported "suspicious activity" around her neighbor's trailer, she informed the police that the white pickup truck did not belong to her neighbors. She further reported that she had never seen the men before and that they did not live in the trailer park, yet they were removing the license plates from the truck and replacing them with different plates.
As Officer Currie neared the trailer park, he observed a white pickup truck with two white males traveling west, away from the trailer park. While Almendarez followed the truck, Currie learned from Linder that the truck had just left "heading westbound on Massey Thompkins." We find, under the facts and circumstances of this case, that the police had reasonable suspicion to detain J.D.B. to maintain the status quo while they conducted a more thorough investigation.[1]
J.D.B. contends that the activity of changing license plates on a vehicle may be consistent with innocent activity. However, while vehicle owners are required to replace their license plates from time to time, they rarely have a legitimate need to replace the plates with "different" plates, i.e., plates containing a different license plate number. Moreover, the activity is made more suspicious in that it was conducted in the cover of a trailer park where J.D.B. did not live. Further, the existence of possible innocent explanations does not deprive a police officer of the ability to also possess reasonable suspicion.[2]Woods, 956 S.W.2d at 37. When a detention is based upon the conduct of the suspect, the conduct itself need not be unlawful or in some sense inconsistent with innocence. Id. at 38 (citing Sokolow, 490 U.S. at 7, 109 S.Ct. 1581). The Texas Court of Criminal Appeals has recognized there may be instances when a person's conduct appears purely innocent, yet when viewed in light of the totality of the circumstances these same actions give rise to reasonable suspicion. Id. In fact, the court stated an investigative *712 detention serves "to resolve that very ambiguity and establish whether the activity is in fact legal or illegal." Id. at 37. The detention allows the officer to determine quickly whether to hold the suspect for charges or allow him to go about his business. Id. Accordingly, J.D.B.'s first issue is overruled.
In his second issue, J.D.B. contends the officers had no probable cause for an arrest. Specifically, J.D.B. alleges that he was arrested when Almendarez handcuffed him-well before the police discovered that the truck was, in fact, stolen. However, handcuffing is not always the equivalent of an arrest. Rhodes v. State, 945 S.W.2d 115, 118 (Tex.Crim.App.1997). Handcuffing a suspect during a temporary investigative detention can be reasonable under the circumstances and not amount to an arrest. Id. When facts demonstrate reasonable suspicion escalating to probable cause for an arrest, handcuffing a suspect for further investigation can be justified. Mays v. State, 726 S.W.2d 937, 938 (Tex. Crim.App.1986). The officer's testimony and other facts and circumstances of the detention are factors to be considered in determining whether an arrest has taken place. Amores v. State, 816 S.W.2d 407, 412 (Tex.Crim.App.1991).
Upon questioning J.D.B., Officer Almendarez believed he had the correct truck as described by Linder. With no other officer present, and having two detainees, Almendarez removed J.D.B. from the truck and handcuffed him. We find Officer Almendarez's actions to be a prudent response to the circumstances that were presented to him.[3]
Viewing the evidence in a light most favorable to the trial court's ruling, while reviewing de novo the lower court's application of the relevant Fourth Amendment standards, we find the investigative detention continued and an arrest did not occur after Officer Almendarez handcuffed J.D.B. We also find the investigative detention continued through the identification by Linder, and the running of the license plates by the officers. Accordingly, J.D.B.'s issue is overruled.
In this consolidated appeal, J.D.B. contends his probation should not have been revoked because his conviction on the charge of unauthorized use of a motor vehicle was predicated on evidence unlawfully admitted when his motion to suppress was denied. Because we have affirmed the trial court's denial of the motions to suppress, we find the trial court's judgment and commitment not to be erroneous and overrule J.D.B.'s contention.
*713 The judgment of the trial court is affirmed in each cause.
NOTES
[1] J.D.B. argues the lack of testimony regarding suspicious time of day, level of criminal activity in the area, or suspects being "known criminals" negates reasonable suspicion. J.D.B. cites Klare v. State as support. 76 S.W.3d at 76-77. However, Klare states these are only factors, and "courts generally require an additional fact or facts particular to the suspect's behavior to justify a suspicion of criminal activity." Id. at 75 (emphasis added). To prove the point, Klare cites to cases where courts have determined what suspect behavior constitutes the additional fact needed to justify stopping the vehicle. Id. (citing Walker v. State, 555 S.W.2d 454 (Tex.Crim. App.1977) (occupants of vehicle matched description of police radio broadcast)).
[2] In Woods, the Texas Court of Criminal Appeals specifically rejects the "as consistent with innocent activity as with criminal activity" construct for determining reasonable suspicion. 956 S.W.2d at 38. The court overruled the cases holding "when the facts are as consistent with innocent activity as with criminal activity, a detention based on those facts is unlawful," and adopted the "totality of the circumstances" approach as outlined here. Id. at 34-38.
[3] "A police officer may briefly stop a suspicious individual in order to determine his identity or to maintain his status quo momentarily while obtaining more information." Mays, 726 S.W.2d at 944. (quoting Gearing v. State, 685 S.W.2d 326, 327-28 (Tex.Crim.App. 1985)). In Mays, a single police officer who responded to a citizen's phone call of a possible burglary, handcuffed and detained two men. Other police officers arrived, and the initial officer on the scene questioned the citizen-informant. 726 S.W.2d at 944. After the citizen positively identified the detainees, officers escorted the two handcuffed men to patrol cars. Id. at 943. They were asked for identification and their licenses were run for outstanding warrants. Id. When the officers determined the car the suspects arrived in was stolen, they arrested the detainees. Id. at 944. The detention lasted about fifteen minutes from the initial handcuffing until the detainees were arrested. Id. The Texas Court of Criminal Appeals found the investigative detention to be from the initial detention by the officer, through the handcuffing, and continuing after the placement of the detainees at the patrol cars. Id. The court stated the evasiveness and misinformation given by the detainees warranted the continuing detention. Id. The court concluded the facts "clearly demonstrate reasonable suspicion rapidly escalating to probable cause to arrest." Id.