**Joe Cruz BANDA, Jr., Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 14–09–00209–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

July 27, 2010.

Clyde Walter Burleson, Houston, for appellant.

Donald W. Rogers Jr., Houston, for appellee.

Panel consists of Justices YATES, SEYMORE, and BROWN.

## OPINION

LESLIE B. YATES, Justice.

Appellant Joe Cruz Banda, Jr. pleaded guilty to misdemeanor driving while intoxicated. In two issues, appellant challenges the trial court's denial of his motion to suppress evidence. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In May 2008, William White and his wife were driving on a highway when White was forced to veer into an emergency lane to avoid being struck by a Ford Taurus. White observed the Taurus travelling at inconsistent speeds and failing to stay within one lane. He also saw the driver drinking from a bottle covered by a brown bag. White began following the Taurus and called 911 to report a possible drunk driver. The Taurus soon exited the freeway and pulled into a convenience store, where the driver went inside and made a purchase. White stopped near the convenience store and gave the 911 dispatcher a physical description of the driver. After the Taurus left the convenience store, White saw the driver open the driver's side door and throw two empty beer cans into the street. White continued following the Taurus until it turned into a neighborhood and stopped in a residential driveway. White parked a short distance from the residence and observed the driver stay in the Taurus for a short time, then enter the

garage where several individuals were gathered. White stayed on the phone with the 911 dispatcher for approximately ten minutes until police officers arrived at his location.

Officer Miguel Daniel was the first officer to arrive at the scene. White recounted the evening's events and described the Taurus's driver to Officer Daniel. Officer Daniel then approached the residence and asked the individuals in the garage who had been driving the Taurus. A few moments later, appellant responded that he had been driving the vehicle and agreed to speak with Officer Daniel outside the garage. After appellant left the garage, Officer Charles Bartlett arrived at the scene and began speaking with White. Officer Daniel subsequently brought appellant to White's vehicle, and White identified appellant as the individual he saw driving the Taurus.

Appellant informed the police that he had recently returned to his home after driving the Taurus to drop an acquaintance off at another location and stopping to buy ice for a party being held at his home. As Officer Bartlett spoke with appellant, he noticed that appellant had slurred speech and glassy eyes, as well as a strong odor of alcohol about him. Officer Bartlett then administered the one-leg-stand, walk-and-turn, and Horizontal Gaze Nystagmus (HGN) tests. Appellant exhibited six clues on the HGN test and was unable to complete the remaining two tests. After observing appellant's responses to these tests, Officer Bartlett placed appellant under arrest for driving while intoxicated.

Appellant was charged with misdemeanor driving while intoxicated. Appellant filed a motion to suppress evidence challenging the legality of his arrest and seeking to suppress "any and all evidence" related to his arrest. Following a suppres-

sion hearing, the trial court denied appellant's motion. After appellant pleaded guilty to the charged offense and true to the enhancement allegations, the trial court assessed punishment at thirty days' confinement in the Harris County Jail. This appeal followed.

## STANDARD OF REVIEW

 We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007). Trial judges are uniquely situated to observe the demeanor and appearance of any witnesses and, as the sole fact-finder at a suppression hearing, may believe or disbelieve any portion of a witness's testimony and make reasonable inferences from the evidence presented. *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim.App.2009); *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex.Crim.App.2007). Accordingly, we afford a great deal of deference to the trial court's determination of historical facts. *Amador*, 221 S.W.3d at 673. However, whether a specific search or seizure is reasonable or supported by probable cause is a question of law subject to de novo review. *Dixon v. State*, 206 S.W.3d 613, 616 (Tex.Crim.App.2006).

 During our review, we must consider all the evidence in the light most favorable to the trial court's ruling. *State v. Iduarte*, 268 S.W.3d 544, 548 (Tex.Crim. App.2008). When, as here, the trial court enters findings of fact after denying a motion to suppress, we must determine whether the evidence—viewed in the light most favorable to the trial court's decision—supports the findings. *Keehn v. State*, 279 S.W.3d 330, 334 (Tex.Crim.App. 2009). We then review the trial court's legal conclusions de novo and will uphold the ruling so long as it is supported by the record and correct under any legal theory

applicable to the case. *Iduarte*, 268 S.W.3d at 548.

## ANALYSIS

Appellant raises two issues challenging the trial court's denial of his motion to suppress evidence. In his first issue, appellant contends he was unlawfully seized because the officers involved in the arrest lacked reasonable suspicion to believe he drove while intoxicated. In his second issue, appellant argues he was subjected to an unlawful warrantless arrest because the police lacked probable cause and no exception to the warrant requirement justified his warrantless arrest. Because each of appellant's issues require an analysis of similar facts, we will address the issues together.

### 1. Burden of Proof

■ A defendant seeking to suppress evidence on the basis of an alleged Fourth Amendment violation bears the initial burden of rebutting the presumption of proper police conduct. *Young v. State*, 283 S.W.3d 854, 872 (Tex.Crim.App.) (per curiam), *cert. denied*, —— U.S. ——, 130 S.Ct. 1015, 175 L.Ed.2d 622 (2009). A defendant meets this burden by demonstrating that the challenged search or seizure occurred without a warrant. *Id.* The burden then shifts to the State to prove that the search or seizure was reasonable under the totality of the circumstances. *Amador*, 221 S.W.3d at 672–73. This burden may be satisfied by a showing that one of the statutory exceptions to the warrant requirement is met. *See Torres v. State*, 182 S.W.3d 899, 902 (Tex.Crim.App.2005). In this case, it is undisputed that no warrant was issued for appellant's arrest. As a result, the State bore the burden of establishing the reasonableness of appellant's detention and arrest. *See Young*, 283 S.W.3d at 872; *Amador*, 221 S.W.3d at 672–73.

### 2. Consensual Encounter Versus Investigative Detention

■ Appellant contends the police lacked reasonable suspicion to believe he drove while intoxicated because no officers observed him driving and appellant does not match the physical description provided by White to the 911 dispatcher. For these reasons, appellant argues he was unlawfully detained either in his garage or in the area outside his home.

■ There are three distinct categories of interactions between citizens and police officers: encounters, investigative detentions, and arrests. *State v. Perez*, 85 S.W.3d 817, 819 (Tex.Crim.App.2002); *Mount v. State*, 217 S.W.3d 716, 724 (Tex. App.-Houston [14th Dist.] 2007, no pet.). Not all interactions between citizens and the police implicate constitutional protections against unreasonable searches and seizures. *See Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *Hunter v. State*, 955 S.W.2d 102, 104 (Tex.Crim.App.1997). Each citizen-police interaction must be evaluated on its own terms. *State v. Garcia–Cantu*, 253 S.W.3d 236, 243 (Tex.Crim.App.2008). A consensual encounter occurs when a police officer approaches an individual in a street or other public place and asks if the person is willing to answer some questions. *Perez*, 85 S.W.3d at 819. Police officers are also free to approach an individual's residence or vehicle and ask to speak with them. *See Garcia–Cantu*, 253 S.W.3d at 243. No constitutional rights are implicated in such situations. *Perez*, 85 S.W.3d at 819. So long as the citizen remains free to disregard the officer's questions or go about his business, the encounter is consensual, and reasonable suspicion is unnecessary. *St. George v. State*, 237 S.W.3d 720, 726 (Tex.Crim.App.2007); *McCraw v.*

*State,* 117 S.W.3d 47, 51 (Tex.App.-Fort Worth 2003, pet. ref'd).

 An investigative detention is a confrontation between a police officer and a citizen in which the citizen yields to a display of authority and is temporarily detained for purposes of an investigation. *Cantrell v. State,* 280 S.W.3d 408, 412 (Tex. App.-Amarillo 2008, pet. ref'd). A person yields to an officer's display of authority when a person would not feel free to leave and terminate the encounter. *Johnson v. State,* 912 S.W.2d 227, 235 (Tex.Crim.App. 1995). Investigative detentions are authorized when an officer has reasonable suspicion to believe an individual is involved in criminal activity. *Balentine v. State,* 71 S.W.3d 763, 768 (Tex.Crim.App. 2002). Reasonable suspicion exists if, under the totality of the circumstances, the detaining officer has specific articulable facts that, when combined with reasonable inferences, would lead him to reasonably suspect that a particular person will soon be or has been engaging in criminal activity. *Id.; State v. Rudd,* 255 S.W.3d 293, 299 (Tex.App.-Waco 2008, pet. ref'd).

The trial court entered the following relevant written findings of fact following the suppression hearing:[1] After obtaining a description of the Taurus's driver from White, Officer Daniel approached appellant's open garage and asked those assembled in the garage who drove the Taurus. A few moments later, appellant responded that he drove the vehicle. Officer Daniel, who did not enter the garage, then asked appellant to come outside and speak with him in the driveway. Appellant voluntarily complied, without being forced or coerced,[2] and accompanied Officer Daniel to White's vehicle where White identified appellant as the Taurus's driver. By this time, Officer Bartlett had arrived at the scene and began speaking with appellant. Officer Bartlett detected a strong odor of alcohol coming from appellant and observed that appellant's eyes were glassy and his speech was slurred. Officer Bartlett then administered three field-sobriety tests, which yielded several signs of intoxication.

After reviewing these facts under the totality of the circumstances, we conclude the initial interaction between appellant and Officer Daniel constituted a consensual encounter. Following his conversation with White, Officer Daniel was free to approach appellant's open garage, inquire who had been driving the Taurus, and ask to speak with appellant after appellant acknowledged driving the vehicle. *See Perez,* 85 S.W.3d at 819 (concluding interaction between police officer and appellant where officer followed appellant into an apartment complex and knocked on appellant's door to investigate a reported purse-snatching constituted a consensual encounter); *see also Garcia–Cantu,* 253 S.W.3d at 243 (recognizing police officers are free to approach a residence to ask to speak with an individual and that such conduct does not constitute a seizure until the officer engages in coercive, offensive, or threaten-

1. Because these findings are supported by the record, we defer to them in our review. *See Iduarte,* 268 S.W.3d at 549; *Amador,* 221 S.W.3d at 673.

2. During the suppression hearing, appellant elicited testimony that Officer Daniel physically entered the garage and that none of the individuals in the garage felt they could decline to answer Officer Daniel's questions. Officer Daniel testified that he did not enter the garage or threaten or coerce anyone to answer his questions, and that appellant voluntarily exited the garage. As the sole judge of the credibility of the witnesses, the trial court was free to believe the version of events presented by Officer Daniel. *See Wiede,* 214 S.W.3d at 24–25. We defer to the trial court's determination. *See Amador,* 221 S.W.3d at 673.

ing conduct). Nothing in the record indicates that appellant was compelled to exit his garage due to the threatening presence of several officers, a display of a weapon or physical touching by Officer Daniel, a display of authority or control by the activation of a siren or patrol car overhead lights, or any indication through Officer Daniel's words or tone of voice that appellant could not refuse Officer Daniel's request to leave the garage and speak to him. *See Koteras v. State*, No. 14–09–00286–CR, 2010 WL 1790808, at *4 (Tex. App.-Houston [ 14th Dist.] May 6, 2010, no pet.) (mem. op., not designated for publication) (listing several factors that may indicate a police-citizen interaction is a seizure rather than a consensual encounter) (citing *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)). Because the initial interaction between Officer Daniel and appellant was a consensual encounter, no reasonable suspicion was necessary for Officer Daniel to approach the garage and ask to speak with appellant. *See St. George*, 237 S.W.3d at 726. Accordingly, the interaction between appellant and Officer Daniel did not constitute an unlawful detention.

Appellant's Fourth Amendment rights were not implicated, and no reasonable suspicion was required, until Officer Bartlett became involved in the investigation and administered field-sobriety tests. *See Rudd*, 255 S.W.3d at 298 (noting that an encounter escalates to an investigative detention when an officer obtains reasonable suspicion to believe an individual drove while intoxicated and then conducts field-sobriety tests). Appellant contends no reasonable suspicion was present because none of the officers involved in the arrest observed him driving. Reasonable suspicion, however, may be supplied by information acquired from another person and need not arise from an officer's personal observations. *Brother v. State*, 166 S.W.3d 255, 257 (Tex.Crim.App.2005) (involving situation where private citizen remained in contact with 911 dispatcher while following suspected drunk driver).

Here, Officer Bartlett knew White had followed appellant to his present location and remained in contact with the 911 dispatcher until police arrived at his location. White was willing to identify himself, remain on the telephone, follow the suspect, and stay at the scene to identify the suspected drunk driver. This gives significant weight to the information provided by White to the police. *See Reesing v. State*, 140 S.W.3d 732, 737 (Tex.App.-Austin 2004, pet. ref'd) (involving facts similar to this case); *see also In re J.D.B.*, 209 S.W.3d 708, 710 (Tex.App.-Houston [14th Dist.] 2006, no pet.) (recognizing information provided to the police by a citizen is inherently credible and reliable when the citizen's only contact with the police is having witnessed the commission of a criminal act). Appellant also informed the police he had recently returned home after driving the Taurus and White positively identified appellant as the Taurus's driver.[3] Officer

---

3. Appellant insists White's identification of appellant is unreliable because appellant does not match the description given by White to the 911 dispatcher. White testified that he initially described the driver as a thirty-five to forty-five year old Hispanic male and may also have described the driver as 5'8" to 5'10" tall and weighing 160–180 pounds. During cross-examination, White acknowledged that he may have described the driver as a white

male between 6'1" and 6'2" tall weighing 180 pounds. Appellant is a 5'9" Hispanic male weighing 140 pounds. The trial court found that White observed the suspected drunk driver to be a Hispanic male approximately thirty-five to forty-five years of age. As the sole judge of witness credibility, the trial court was free to determine which description White provided to the 911 dispatcher. *See Wiede*, 214 S.W.3d at 24–25. We defer to this

Bartlett detected several indicators that appellant was intoxicated. Taken together, these facts are sufficiently reliable to support a conclusion that appellant drove while intoxicated, thus providing Officer Bartlett with reasonable suspicion to detain appellant. *See Garcia v. State*, 296 S.W.3d 180, 185 (Tex.App.-Houston [14th Dist.] 2009, no pet.) (concluding police had reasonable suspicion to believe appellant drove while intoxicated based on private citizen's eye-witness account of erratic driving and officer's own observations). Accordingly, the interaction between appellant and Officer Bartlett did not constitute an unlawful investigative detention.

### 3. Appellant's Warrantless Arrest

Appellant further contends he was illegally arrested because the police did not obtain a search warrant and had no probable cause to arrest appellant, and that none of the statutory exceptions to the warrant requirement apply in this case. *See Torres*, 182 S.W.3d at 901 (recognizing that, under Texas law, warrantless arrests are proper only when (1) probable cause for the arrest exists with respect to the individual in question and (2) the arrest falls within one of the statutory exceptions to the warrant requirement).

### a. Probable Cause

Probable cause for a warrantless arrest exists when the arresting officer possesses reasonably trustworthy information sufficient to warrant a reasonable belief that an offense has been or is being committed. *Paulea v. State*, 278 S.W.3d 861, 864 (Tex.App.-Houston [14th Dist.] 2009, pet. ref'd) (citing *McGee v. State*, 105 S.W.3d 609, 614 (Tex.Crim.App.2003)). The State bears the burden of proving probable cause to support a warrantless arrest. *Id.* at 865. We review de novo whether probable cause exists to justify a warrantless arrest after considering the totality of the circumstances surrounding the arrest. *Id.*

As discussed earlier, Officer Bartlett possessed sufficient facts to form a reasonable inference that appellant drove while intoxicated based on the background facts provided by White and appellant and appellant's performance during the field-sobriety tests. *See id.* (defining "probable cause"); *see also Diaz v. State*, No. 05–09–00750–CR, 2010 WL 1714001, at *2 (Tex.App.-Dallas Apr. 28, 2010, no pet.) (not designated for publication) (concluding officer had probable cause to arrest appellant for driving while intoxicated based on results of field-sobriety tests, appellant's breath smelling of alcohol, and appellant's unsteady balance); *Johnson v. State*, No. 14–07–00818–CR, 2008 WL 5085561, at *2 (Tex.App.-Houston [14th Dist.] Nov. 25, 2008, pet. dism'd) (mem. op., not designated for publication) ("[A]ppellant's failure of the field[-]sobriety test also provided a basis for probable cause to arrest him.").

### b. Exception to the Warrant Requirement

Under Texas law, warrantless arrests are authorized only in limited circumstances outlined primarily in Chapter 14 of the Code of Criminal Procedure. *Swain v. State*, 181 S.W.3d 359, 366 (Tex.Crim.App.2005). The State contends appellant's arrest is justified under article 14.03(a)(1) of the Code of Criminal Procedure, which authorizes the warrantless arrest of an individual found in a suspicious place under circumstances reasonably

finding of historical fact. *See Iduarte*, 268 S.W.3d at 549. We also note that White's identification of appellant as the Taurus's driver is supported by appellant's admission to the police that he recently returned home after driving the Taurus.

showing the individual committed a breach of the peace.[4] *See* TEX.CODE CRIM. PROC. ANN. art. 14.03(a)(1) (Vernon Supp.2009). For a warrantless arrest to be justified under article 14.03(a)(1), the totality of the circumstances must show (1) the existence of probable cause that the defendant committed a crime and (2) the defendant must be found in a suspicious place. *Dyar v. State,* 125 S.W.3d 460, 468 (Tex.Crim.App. 2003). Having earlier concluded that probable cause existed to arrest appellant, we must now determine whether appellant was found in a suspicious place.

Few places, if any, are inherently suspicious. *Id.* at 464–65. The determination of whether a place is suspicious requires a highly fact-specific analysis. *Id.* at 468. Any place may become suspicious when an individual at the location and the accompanying circumstances raise a reasonable belief that the individual committed a crime and exigent circumstances call for immediate action or detention by the police. *Swain,* 181 S.W.3d at 366; *Hollis v. State,* 219 S.W.3d 446, 459 (Tex. App.-Austin 2007, no pet.). A key factor used to justify the determination of a place as suspicious is whether the time frame between the crime and the apprehension of the suspect is short. *See Dyar,* 125 S.W.3d at 468.

Under the particular facts of this case, we conclude that the area outside appellant's home where he was arrested was a suspicious place because the police could reasonably believe, based on the surrounding circumstances, that appellant drove while intoxicated and it was necessary to take prompt action in order to ascertain appellant's blood-alcohol level. *See Gallups v. State,* 151 S.W.3d 196, 201–02 (Tex. Crim.App.2004) (concluding appellant's

home, where he was arrested for driving while intoxicated shortly after leaving his wrecked vehicle at the scene of an accident, was a suspicious place and that prompt action was needed to ascertain appellant's blood-alcohol level). The short amount of time between appellant's arrival at his home and Officer Daniel's arrival at the scene—approximately ten minutes— also supports a conclusion that appellant was found in a suspicious place. *See Dyar,* 125 S.W.3d at 468; *see also Cribley v. State,* No. 04–04–00047–CR, 2005 WL 1812585, at *1–2 (Tex.App.-San Antonio Aug. 3, 2005, no pet.) (mem. op., not designated for publication) (affirming appellant's conviction for driving while intoxicated after determining appellant's home was a suspicious place because appellant returned home shortly after rear-ending another driver's vehicle and was arrested at home an hour later); *Sandoval v. State,* 35 S.W.3d 763, 768–69 (Tex.App.-El Paso 2000, pet. ref'd) (concluding appellant's backyard to be a suspicious place and recognizing warrantless arrest was necessary "because testing for alcohol is a time-sensitive matter").

Because the totality of the circumstances show that the police possessed probable cause, appellant was found in a suspicious place, and exigent circumstances called for immediate action, we conclude appellant's warrantless arrest is justified under article 14.03(a)(1). *See* TEX. CODE CRIM. PROC. ANN. art. 14.03(a)(1); *Swain,* 181 S.W.3d at 366; *Dyar,* 125 S.W.3d at 468. Accordingly, no search or arrest warrant was necessary in this case, and appellant was not subjected to an unlawful arrest.

---

4. Driving while intoxicated constitutes a breach of the peace. *See Miles v. State,* 241 S.W.3d 28, 42 (Tex.Crim.App.2007); *Gallups v. State,* 151 S.W.3d 196, 201 (Tex.Crim.App. 2004).

## CONCLUSION

After reviewing the record in the light most favorable to the trial court's ruling, we conclude the trial court did not err in denying appellant's motion to suppress evidence because its ruling is supported by the evidence and legally correct. *See Iduarte,* 268 S.W.3d at 548. We overrule each of appellant's issues and affirm the judgment of the trial court.