**Affirmed and Memorandum Opinion filed June 11, 2013.**



In the

# Fourteenth Court of Appeals

## NO. 14-12-00669-CR
## NO. 14-12-00670-CR

### MARCO ANTONIO FLORES-PEREZ, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the County Criminal Court at Law No. 2**
**Harris County, Texas**
**Trial Court Cause Nos. 1781891 & 1781892**

## M E M O R A N D U M   O P I N I O N

Appellant Marco Antonio Flores-Perez pleaded guilty to the misdemeanor offenses of evading arrest and driving while intoxicated (DWI). Appellant appeals the trial court's denial of his motion to suppress evidence based on his unlawful arrest under the Fourth Amendment and article I, section 9, of the Texas Constitution. Appellant argues the following four issues: (1) the trial court erred in finding that police had reasonable suspicion to detain appellant: (2) the trial court erred in finding that consent was given to search the main house; (3) even if there

was valid consent to search the main house, the trial court erred in finding consent to search the back building where appellant was located; and (4) the trial court erred in finding that no warrant was needed to search the back building and arrest appellant due to the presence of exigent circumstances. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged with the misdemeanor offenses of evading arrest or detention and DWI, alleged to have been committed on or about September 17, 2011. Appellant filed a motion to suppress the evidence, arguing that it was obtained as a result of an illegal search and seizure.

At the suppression hearing, Officers Karen Taylor and Carl Rodriguez with the Houston Police Department testified that shortly after midnight on September 17, 2011, Rodriquez was conducting a traffic stop when Taylor pulled up in her vehicle to assist him. Taylor stopped her vehicle slightly behind and to the left of Rodriguez's vehicle. The stop took place on a two-lane road, and Taylor's vehicle blocked "most of the right lane." Then appellant—who was driving a pick-up truck with "music blaring"—"squealed his tires" as he "quickly" turned the corner," did not reduce his speed around the police vehicles, put his back tire into the roadside drainage ditch, and accelerated past the police vehicles in the opposite lane of traffic. Appellant drove within two feet of the traffic stop and came "dangerously close to striking" Taylor's vehicle. Taylor activated her emergency lights and proceeded to pursue appellant's truck. Appellant did not stop and continued driving for approximately 75 yards, then swerved to the right and "squealed" and "spun" his tires while backing into a driveway. The nature of appellant's "pretty reckless" and "erratic" driving indicated to both Taylor and Rodriguez, based on their training and experience, that appellant might be "drunk or intoxicated." Appellant stopped, jumped out of the truck, and ran toward a

2

house.  Taylor told appellant to "stop" in both English and Spanish.  Appellant did not stop, ran into the house, and slammed the front door.

Taylor testified that she knocked on the front door, and a woman, who turned out to be appellant's mother, opened the door.  Taylor asked the woman in both English and Spanish, "Where is he?"  The woman replied she did not know and then made a gesture that Taylor interpreted as "come in."  Taylor followed the woman through the house through a hallway to a couple of bedrooms, but did not find appellant.  After Rodriguez concluded his traffic stop, he proceeded to the house, entered through the open front door, and joined Taylor in the search for appellant.  As the officers headed toward the kitchen, they observed a set of keys on the floor and the back door "cracked open."  Rodriguez also heard dogs barking in the backyard.  Taylor and Rodriguez entered the backyard through the open back door and shined their flashlights into a dark, large "shed" or "storage unit."  Taylor and Rodriguez searched areas of the backyard where a person "could hide."  Taylor and Rodriguez then heard "a thump and a rustle" and a "stirring" at the back of the shed that sounded like a person moving around.  Rodriguez then opened the shed's unlocked back door and located appellant.  When appellant refused to exit the shed, Taylor and Rodriguez forcibly removed and then arrested him.  Appellant smelled like "an alcoholic beverage" and had "glassy" eyes.

Appellant's mother testified that appellant entered the main house shortly before police arrived.  Appellant's mother heard knocking so she opened the front door.  A "lady police officer" asked appellant's mother, "Where is he?" and appellant's mother shrugged that she did not know.  According to appellant's mother, she did not invite the officer to come in.  The officer followed appellant's mother into the house.  The officer and another police officer who came into the house "a little later" searched a few rooms.  The family's dogs were barking as the

3

officers entered the backyard.

The trial court denied the motion to suppress and, upon appellant's request, issued findings of fact and conclusions of law. Appellant pleaded guilty to evading arrest or detention and DWI, and was sentenced to 30 days' imprisonment.

On appeal, appellant argues that the trial court erred in denying his motion to suppress because: (1) the State did not show police had a legal basis to detain or arrest appellant; (2) the State did not show police obtained lawful consent to search the main house; (3) even if police obtained consent to search the main house, the State did not show police obtained lawful consent to search the back building; and (4) the State did not show police had probable cause and that exigent circumstances existed to excuse the need for a warrant to search the back building and arrest him.

## II. STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress using a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Banda v. State*, 317 S.W.3d 903, 907 (Tex. App.—Houston [14th Dist.] 2010, no pet.). "Trial judges are uniquely situated to observe the demeanor and appearance of any witnesses and, as the sole fact-finder at a suppression hearing, may believe or disbelieve any portion of a witness's testimony and make reasonable inferences from the evidence presented." *Banda*, 317 S.W.3d at 907 (citing *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009); *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007)). Therefore, we afford a great deal of deference to the trial court's determination of historical facts. *Id.* (citing *Amador*, 221 S.W.3d at 673); *see Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). When a trial court enters findings of fact, we thus determine whether the evidence, viewed in the light most favorable to the trial court's ruling

4

on the motion to suppress, supports these fact findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006); *see Banda*, 317 S.W.3d at 907.

However, the legal question of whether a specific search or seizure is reasonable or supported by probable cause under the Fourth Amendment is subject to de novo review. *Dixon v. State*, 206 S.W.3d 613, 616 (Tex. Crim. App. 2006); *Banda*, 317 S.W.3d at 907. We will sustain the trial court's ruling so long as it is reasonably supported by the record and correct under any legal theory applicable to the case. *State v. Iduarte*, 268 S.W.3d 544, 548 (Tex. Crim. App. 2008); *Banda*, 317 S.W.3d at 907.

### III.    ANALYSIS

To suppress evidence on an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador*, 275 S.W.3d at 878. Once the defendant satisfies this burden by establishing that the search or seizure occurred without a warrant,[1] the burden shifts to the State to prove the search or seizure was reasonable. *See id.*; *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007); *Russell v. State*, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986).

### A. Whether police had a legal basis to detain or arrest appellant

Appellant first argues that any detention was unreasonable because he had not committed a traffic violation and there was no reason to suspect that he was driving while intoxicated. Appellant further contends that because there was no legal basis for his detention, his subsequent arrest for evading arrest or detention likewise was invalid. We conclude that, based on the totality of the circumstances, the officers were justified in their seizure of appellant based on reasonable

---

[1] The parties do not dispute that police did not obtain any warrant to conduct any search of the main house or back building, or to arrest appellant.

5

suspicion of commission of DWI.

### 1. Applicable law

Both the Fourth Amendment of the U.S. Constitution and article I, section 9, of the Texas Constitution protect individuals from unreasonable searches and seizures. *Richardson v. State*, 865 S.W.2d 944, 948 (Tex. Crim. App. 1993). Appellant concedes that the Texas Constitution does not provide more protection, so we analyze his challenge under the Fourth Amendment. *See Flores v. State*, 319 S.W.3d 697, 702 n.8 (Tex. Crim. App. 2010).

For Fourth Amendment purposes, a traffic stop is a seizure and must be supported by reasonable suspicion to be lawful. *Vasquez v. State*, 324 S.W.3d 912, 919 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Davis v. State*, 947 S.W.2d 240, 243–45 (Tex. Crim. App. 1997)). Whether the detaining officer had reasonable suspicion to justify the stop "must be examined in terms of the totality of the circumstances and will be justified when the detaining officer has specific articulable facts, which taken together with rational inferences from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity." *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997); *see State v. Woodard*, 341 S.W.3d 404, 411 (Tex. Crim. App. 2011). The detaining officer's actual subjective intent is irrelevant; we instead examine whether there was an objectively justifiable basis for the seizure. *See LeCourias v. State*, 341 S.W.3d 483, 487–88 (Tex. App.—Houston [14th Dist.] 2011, no pet.). In making this determination, we use "commonsense judgments and inferences about human behavior." *Woodard*, 341 S.W.3d at 412.

### 2. Appellant's suppression hearing

Here, both officers observed appellant's driving. Taylor testified that

appellant "squealed" his truck around the corner, "blared" his music, failed to slow down while passing the police vehicles involved in the traffic stop, put his back tire in the opposite ditch, and continued "squealing" down the street and accelerated past the stop. She described appellant's driving as "pretty reckless" because he was "all over the road swerving, speeding up, slowing down, speeding up." Appellant then "squealed" back into a driveway. Taylor indicated that she thought appellant could be intoxicated.

Rodriguez testified that he heard appellant's "squealing" tires as he observed appellant "turning quickly" around the corner. Appellant drove within two feet of the traffic stop, "dangerously close to" Taylor's vehicle. Appellant then accelerated past the stop at or slightly above the residential speed limit of 30 miles per hour. Appellant did not turn down his "blaring" music, which Rodriguez noted was at citation level. Appellant continued down the road, then swung his truck to the right and "spun" his tires while backing into a driveway. Rodriguez had concerns appellant was driving "drunk or intoxicated."

The trial court made a factual finding that Taylor observed appellant driving erratically, which included "squealing" his tires, driving off the road, and "maybe excessive speed." The trial court thus concluded that Taylor "certainly had more than ample reasonable suspicion to stop [appellant's] vehicle." The trial court, however, did not articulate the precise crime police reasonably suspected appellant of committing.

Viewing the evidence in the light most favorable to the trial court's ruling, we conclude that such evidence supports the court's factual finding regarding appellant's erratic manner of driving. *See Kelly*, 204 S.W.3d at 818. We proceed to review de novo the trial court's legal conclusion that reasonable suspicion existed to justify police stopping appellant. *See Iduarte*, 268 S.W.3d at 548;

*Dixon*, 206 S.W.3d at 616.

### 3. Police had a legal basis to stop appellant for reasonable suspicion of DWI.

Appellant argues that police had no lawful basis to stop him for either a traffic violation—specifically, failure to drive on the right side of the road or reckless driving[2]—violation of a city noise ordinance, or DWI.

Even though appellant may have a defense to a traffic citation, such as that the police vehicles were blocking the right-hand lane,[3] "it does not negate a stop based on a reasonable suspicion that the driver of the motor vehicle has lost control of his mental and physical faculties by the ingesting of alcohol and/or other drugs." *See Cook v. State*, 63 S.W.3d 924, 929 (Tex. App.—Houston [14th Dist.], pet. ref'd); *Gajewski v. State*, 944 S.W.2d 450, 452 (Tex. App.—Houston [14th Dist.] 1997, no pet.). In *Cook*, the appellant argued that there was no reasonable basis to stop him for failure to maintain a single lane where there were no other vehicles near the appellant and there was no evidence his weaving was unsafe. 63 S.W.3d at 928–29. This court, however, concluded that the officer was justified in stopping the driver on a reasonable suspicion of DWI "based on the totality of the facts and the rational inferences to be drawn from those facts" of the appellant's "driving behavior." *Id.* at 929 (officer observed appellant leave a bar at a considerable rate of speed, pull into gas station and leave within ten to fifteen seconds, drive "all over" an unmarked roadway, and weave back and forth between

---

[2] Appellant further contends that, in the trial court, the State did not argue appellant's alleged reckless driving as a reasonable basis for his detention. The State did present, in the trial court, reasonable suspicion of DWI as a basis for the stop.

[3] *See* TEX. TRANSP. CODE ANN. § 545.051 (West 2011) (allowing for driver to travel on wrong side where "an obstruction necessitates moving the vehicle left of the center of the roadway").

traffic lanes, so he "began following him because he thought [appellant] might be intoxicated"); *see also Gajewski*, 944 S.W.2d at 453 (concluding reasonable suspicion of DWI justified stop where officer observed driver weaving across center line three times and weaving across and into another lane).

Appellant argues that he only swerved out of his lane to avoid the police cars parked in the middle of the street, and later to turn into his driveway. But appellant did not merely swerve a couple of times. He also rounded the corner "quickly," "squealing" his tires. He did not slow his speed as he passed the ongoing traffic stop, putting his back tire into the ditch and again "squealing" his tires. Appellant passed "dangerously" close to Taylor's stopped vehicle and accelerated, albeit to only slightly above the speed limit, past the stop. He drove "all over the road swerving, speeding up, slowing down, speeding up." He did not lower the volume of his "blaring" music. He did not appear to "recognize" that there were two police vehicles conducting a stop. Then he swung out to the right, and again "squealed" and "spun" his tires backing into a driveway. Thus, the specific, articulable facts of appellant's erratic "driving behavior," together with rational inferences drawn from those facts, provided a sufficient basis upon which a reasonable police officer reasonably could suspect that appellant was driving while intoxicated. *See Woods*, 956 S.W.2d at 38; *Cook*, 63 S.W.3d at 929.[4]

Further, both Taylor and Rodriguez testified that based on their training and experience investigating DWIs, they had concerns based on appellant's manner of driving that he might be intoxicated. *See Curtis v. State*, 238 S.W.3d 376, 381 (Tex. Crim. App. 2007) (considering officers' training and experience related to

---

[4] Appellant's driving behavior is thus distinguishable from that at issue in *State v. Guzman*, relied on by appellant. *See* 240 S.W.3d 362, 367–68 (Tex. App.—Austin 2007, pet. ref'd) (refusing to find reasonable suspicion for DWI based merely on officer's observation of one tire losing traction and spinning when driver accelerated from stop at an intersection).

detecting DWIs). Moreover, there is no dispute that this incident occurred after midnight, and Taylor testified "we get many DWIs in that particular area." *See Foster v. State*, 326 S.W.3d 609, 613 & n.10 (Tex. Crim. App. 2010) (noting that "time and location are relevant and appropriate considerations when doing a totality of the circumstances review to determine whether or not reasonable suspicion exists," and considering time of night, 1:30 a.m., and location, near Austin's downtown bar district); *see also Curtis*, 238 S.W.3d at 381 (considering "lateness of the hour"—1:00 a.m.).[5]

In light of the time of night, the location, the officers' training and experience, and appellant's driving behavior, it was rational for police to have inferred that appellant may have been intoxicated. *See Foster*, 326 S.W.3d at 614. Given the totality of the circumstances, we therefore conclude the officers' testimony warranted the trial court's ruling that Taylor had reasonable suspicion— here, for commission of DWI—so that there was an objectively justifiable basis to detain appellant. Therefore, we overrule appellant's first issue.

## B. Whether police had a legal basis to enter the back building without a warrant to locate and arrest appellant

Appellant next argues in three issues that the State did not meet its burden to prove that the warrantless search for appellant, and his arrest, was justified by any exception to the warrant requirement—namely, lawful consent to search the main house, lawful consent to search the back building, or exigent circumstances.[6] We

---

[5] *Bass v. State*, relied on by appellant, is thus distinguishable because the officer there did not testify that he suspected the appellant of DWI based on his experience or that "anything about the objective circumstances—time, location, the vehicle's movement, etc.—would have led a reasonable officer to suspect" the appellant was intoxicated besides his swerving. *See* 64 S.W.3d 646, 650 (Tex. App.—Texarkana 2001, pet. ref'd).

[6] Appellant concedes that if the State has met its burden to show exigent circumstances, i.e., we overrule his fourth issue, there is no need for the State also to have shown voluntary consent of the main house or the back building and we need not address appellant's second and

conclude that sufficient exigent circumstances existed to justify police entering the main house and the back building, and arresting appellant without a warrant.

### 1. Applicable law

There is a strong preference for police to administer searches and seizures pursuant to a warrant. *See Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007). Pursuant to the Fourth Amendment, warrantless searches and seizures inside a residence are presumptively unreasonable, subject to a "few specifically defined and well established exceptions." *See McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993)). These exceptions include: exigent circumstances, voluntary consent to search, and search incident to arrest. *See Gutierrez*, 221 S.W.3d at 685; *McGee*, 105 S.W.3d at 615; *see also* TEX. CODE CRIM. PROC. ANN. art. 14.05 (West 2011) (consent and exigent circumstances allow officer making arrest to enter residence without warrant). The State bears the burden to prove that a warrant exception applies. *McGee*, 105 S.W.3d at 615.

The State must satisfy a two-step process in order to validate a warrantless search or arrest based on exigent circumstances. *See Parker v. State*, 206 S.W.3d 593, 597 (Tex. Crim. App. 2006) (warrantless entry or search); *Winter v. State*, 902 S.W.2d 571, 573 (Tex. App.—Houston [1st Dist.] 1995, no pet.) (warrantless arrest). If either step is not met, such warrantless action "will not pass muster under the Fourth Amendment." *See Parker*, 206 S.W.3d at 597.

First, in the context of a warrantless entry or search, there must be probable cause to enter or search a specific location. *Gutierrez*, 221 S.W.3d at 685. Such probable cause exists "when reasonably trustworthy facts and circumstances within

third issues.

the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality . . . or evidence of a crime will be found." *Id.* (quoting *Estrada v. State*, 154 S.W.3d 604, 609 (Tex. Crim. App. 2005)). Probable cause for a warrantless arrest exists "if, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a reasonably prudent man in believing that the person arrested had committed or was committing an offense." *Amador*, 275 S.W.3d at 878.

Second, an exigency that requires an immediate entry to a particular place without first obtaining a warrant must exist. *Parker*, 206 S.W.3d at 597. "Just as an officer, in the heat of the moment, will use all facts available to him in deciding whether to enter a home without a warrant, so too must a reviewing court analyze each piece of evidence as part of the totality of information, as it relates to both the probable cause and the exigent circumstances determinations." *Id.* at 601. "A variety of [exigent] circumstances may place a police officer in situations in which a warrantless entry is viewed as a reasonable reaction by the officer." *McNairy v. State*, 835 S.W.2d 101, 107 (Tex. Crim. App. 1991). Exigent circumstances may include: (1) rendering aid or assistance to persons whom the officer reasonably believes need assistance, (2) a risk of danger to police or any victim, (3) preventing the destruction of evidence or contraband, (4) an increased likelihood of apprehending a suspect, and (5) hot or continuous pursuit. *See Gutierrez*, 221 S.W.3d at 685; *McNairy*, 835 S.W.2d at 107; *Randolph v. State*, 152 S.W.3d 764, 771 (Tex. App.—Dallas 2004, no pet.). Texas courts, including this court, have recognized hot pursuit of a suspect attempting to avoid arrest or detention as an exigent circumstance justifying a warrantless entry and arrest. *See Rue v. State*, 958 S.W.2d 915, 918 (Tex. App.—Houston [14th Dist.] 1997, no pet.); *Curry v.*

12

*State*, 831 S.W.2d 485, 488 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd); *see also Winter*, 902 S.W.2d at 573–74. "[A] suspect may not defeat an arrest which has been set in motion in a public place . . . by the expedient of escaping to a private place." *Curry*, 831 S.W.2d at 488 (quoting *United States v. Santana*, 427 U.S. 38, 43 (1976)).

### 2. Appellant's suppression hearing

Here, after police decided to stop appellant based on reasonable suspicion of DWI, Taylor activated her emergency lights and began pursuing appellant in her vehicle down a residential street. Appellant did not stop but instead continued driving for about 75 yards, then backed into his driveway and exited his vehicle. Despite Taylor yelling at him in both English and Spanish to "stop," appellant ran into the main house and slammed the door. After knocking on the door and entering the house, Taylor continued to pursue appellant. Taylor asked appellant's mother where he was and checked the bedrooms for appellant. Around this time, Rodriguez entered the open front door of the main house and joined Taylor in the search for appellant. In the kitchen, the officers observed keys on the floor and the back door cracked open. Rodriguez also heard dogs barking as the officers entered the backyard. Taylor and Rodriguez shined their flashlights into a dark building that they believed to be a large storage shed. As they continued searching the backyard, both officers heard a "thump and rustle" and a "stirring" coming from the back area of the shed. This noise came from "above the doorknob" of the back door to the shed and sounded like a person moving around. Because the shed otherwise appeared vacant, Rodriguez suspected that appellant made the noise. Rodriguez turned the unlocked door handle, entered the building, and located appellant. Appellant smelled like alcohol and had "glassy" eyes. The officers removed appellant from the building and arrested him.

13

The trial court made the following factual findings: that Taylor attempted to stop appellant by following his vehicle with her emergency lights on, that appellant failed to stop his vehicle, that appellant was attempting to evade Taylor while she followed him in her vehicle, that appellant was attempting to evade Taylor after he exited his vehicle and she exited her vehicle and told him to stop, that appellant failed to stop and entered a house, that appellant was attempting to evade Taylor when he entered the house, that Taylor chased appellant to the house, that appellant's mother knew appellant was being pursued by police, that it became apparent that appellant was not in the house, that the keys to appellant's vehicle were on the kitchen table near an open back door, that Taylor now accompanied by Rodriguez entered the backyard where they observed another structure and continued to search for appellant, that the officers heard "some sounds within the structure," and that the officers found appellant and placed him under arrest.

The trial court thus found "that the officers were certainly in hot pursuit of the suspect that is sufficient, more than sufficient exigent circumstances existed for the officers to enter the structure to continue to do their search for the defendant." The trial court concluded that "the search of the building was certainly not unreasonable at all under the circumstances then and there existing, the officers having more than sufficient probable cause to search and arrest the appellant." Thus, the trial court concluded that the State had shown both probable cause and the exigent circumstance of hot pursuit—justifying the officers' warrantless entry into the back building and arrest of appellant.

Viewing the evidence in the light most favorable to the trial court's ruling, we conclude that such evidence supports the court's factual findings regarding appellant's evasive actions and the officers' efforts to pursue and locate appellant.[7]

---

[7] One minor discrepancy is that the evidence shows that the officers observed the keys on

14

*See Kelly*, 204 S.W.3d at 818. We proceed to review de novo the trial court's legal conclusion that probable cause supported the officers' warrantless entry into the back building to arrest appellant. *See Dixon*, 206 S.W.3d at 616. We review the trial court's finding that the exigent circumstance of hot pursuit existed for clear error or an abuse of discretion. *See Parker*, 206 S.W.3d at 598 n.21 (citing *United States v. Coles*, 437 F.3d 361, 366 (3d Cir. 2006)); *Estrada*, 154 S.W.3d at 610.

### 3. Probable cause existed to search the back building.[8]

Appellant argues that police did not have probable cause to search the back building for the instrumentality of or evidence of a crime because Rodriguez testified that he did not believe appellant was in the back building. In particular, appellant contends probable cause cannot be supported because Rodriguez believed there was a "fifty-fifty chance" that appellant had cleared the fence and had not remained in the backyard.

However, we do not focus on a singular fact in isolation but instead make our determination of whether the officers had probable cause and exigent

---

the kitchen floor instead of the table. However, the significance of the keys is not their precise location in the kitchen, but instead that the officers observed them left near the open back door of the house, the rational inference being that appellant dropped or tossed them in his haste as he fled into the backyard.

[8] Appellant does not contest on appeal that, if reasonable suspicion existed initially to stop appellant, police had probable cause to believe appellant was evading arrest or detention. A person evades arrest or detention if he intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain him. TEX. PENAL CODE ANN. § 38.04(a) (West 2011). A peace officer may arrest an offender without a warrant for any offense committed in the officer's presence or within the officer's view. TEX. CODE CRIM. PROC. ANN. art. 14.01(b) (West 2011). Here, based on the facts that appellant continued driving and refused to stop after Taylor began pursuing him with her emergency lights on, and appellant refused to stop after exiting his vehicle as Taylor ordered him to stop, and appellant ran into the house and slammed the door, police had probable cause to believe that appellant was evading arrest or detention. Because police sought to lawfully detain appellant for reasonable suspicion of DWI and appellant evaded such detention, appellant committed an offense in the presence of Taylor that justified appellant's arrest. *See Rue*, 958 S.W.2d at 918.

circumstances to enter the back building without a warrant based on "the sum of all the information known to the officer[s] at the time of entry." *See Parker*, 206 S.W.3d at 600. "Probable cause to search exists when the totality of the circumstances allows a conclusion that there is a fair probability of finding contraband or evidence at a particular location." *Dixon*, 206 S.W.3d at 616. Moreover, "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)).

Here, appellant's trail first led police from his vehicle to the main house. As Taylor ordered appellant to stop after he exited his vehicle, appellant ran into the main house and slammed the door. Taylor entered the house and searched for appellant. Rodriguez joined the search. The officers observed a set of keys on the kitchen floor and the back door "cracked open," and Rodriguez heard dogs barking, all of which reasonably could lead to the rational inference that appellant had exited the main house and entered the backyard. The officers observed another structure in the backyard and shined their flashlights into it, but the shed was darkened, did not have a deadbolt, and appeared to be used for storage. Then the officers checked around the building and the "clutter" in the backyard. As Rodriguez noted, although appellant may have hopped over the fence, an equal probability existed that appellant had hidden himself somewhere in the backyard. Faced with this even probability, the officers then heard the "thump" and "stirring" noises that sounded like a person coming from the back building. The officers specifically suspected that appellant had made the noise; Rodriguez "didn't believe anyone else would be behind the door because of the fact that it looked like a storage shed or empty building." Therefore, keeping in mind that probable cause must be based on all the information within the officers' knowledge at the time of

entry, we conclude that the circumstances here would lead a man of reasonable prudence to believe there was a "fair probability" appellant was hidden behind the back door of the back building. *See Gutierrez*, 221 S.W.3d at 685. In other words, appellant's trail ultimately led police to the back building.

### 4. Police were in hot pursuit of appellant.

Appellant argues that hot pursuit could not provide the basis for a finding of exigent circumstances to enter the back building to search for and arrest him because the trail had "gone cold" after police searched the main house and the officers did not see appellant enter the back building. Appellant further argues that Rodriguez admitted police could have obtained a warrant for the back building.

Hot pursuit of a suspect evading arrest or detention is an exigent circumstance justifying a warrantless entry and arrest. *See Santana*, 427 U.S. at 42–43; *Rue*, 958 S.W.2d at 918; *Winter*, 902 S.W.2d at 573–74; *Curry*, 831 S.W.2d at 488. Appellant does not dispute evading arrest or detention is a serious enough crime that police in hot pursuit would be permitted to enter the back building without a warrant and arrest him. *See Winter*, 902 S.W.2d at 573–74. And appellant conceded at the suppression hearing that the rule of hot pursuit likely permitted Taylor's warrantless entry into the main house. Instead, appellant relies on *Welsh v. Wisconsin* and contends that hot pursuit did not justify entry into the back building because there was no longer an immediate or continuous pursuit. *See* 466 U.S. 740, 753 (1984) (rejecting State's argument that police were in hot pursuit "because there was no immediate or continuous pursuit of the petitioner from the scene of a crime").

However, *Welsh* is distinguishable because the suspect there had abandoned his car at the scene of an accident, walked away from the scene without ever being observed by police, and was safely at his home asleep by the time of his arrest. *See*

*id.* Further, while the doctrine of hot pursuit focuses on the immediate and continuous nature of the pursuit, it does not require that police keep the suspect squarely in their sights at all times. *See LaHaye v. State*, 1 S.W.3d 149, 152–53 (Tex. App.—Texarkana 1999, pet. ref'd) (concluding hot pursuit applied despite officer having to turn his vehicle around to pursue suspect, who was on a moped, and despite officer's losing sight of suspect as suspect ran into an apartment complex); *see also Jimenez v. State*, 750 S.W.2d 798, 803 (Tex. App.—El Paso 1988, pet. ref'd) (noting that "it is the overall continuity of the pursuit which should govern," and concluding hot pursuit applied despite "gap in observation" of appellant's vehicle by police).

Here, Taylor began pursuing appellant's truck on the residential street and observed appellant enter the main house. Taylor continued her pursuit of appellant by entering and searching for him in the main house. Rodriguez joined Taylor, and both officers continued the pursuit based on reasonable circumstances that led them to believe appellant had entered the backyard. The officers continued to search for appellant in the backyard by checking areas where a person could hide. Rodriguez indicated that it was not "five, ten seconds into searching" the back portion of the yard when the officers heard noises coming from the back building that they believed to be appellant. Thus, there was no break in the officers' continuous efforts to apprehend appellant. Therefore, we conclude the trial court did not commit clear error or abuse its discretion in finding that the officers were in hot pursuit of appellant when they entered the back building. *See Parker*, 206 S.W.3d at 598 n.21; *Estrada*, 154 S.W.3d at 610; *LaHaye*, 1 S.W.3d at 153.

Finally, appellant argues the State failed to show exigent circumstances existed that "made the procuring of a warrant impracticable" because Rodriguez stated, "we could have [obtained a warrant] if we really suspected that [appellant]

18

was in [the back building]." But this testimony does not indicate that obtaining a warrant was *in fact* practicable under the circumstances presented. To the contrary, Rodriguez was referring to a hypothetical situation because what the officers knew at the time did not lead them to "really suspect" appellant was in the back building. The back building appeared dark and vacant, and there was a "fifty-fifty chance" appellant could have "hopped the fence" instead of staying in the backyard. Mere seconds later, as they continued their search of the backyard, the officers heard sounds coming from the back building that reasonably indicated appellant—whom they reasonably suspected of DWI and whom they had probable cause to believe was committing the serious offense of evading detention or arrest—was hidden inside. Based on the totality of the information available to the officers in the heat of that precise moment, we cannot conclude that their decision to immediately enter the back building without first obtaining a warrant was unreasonable. *See Parker*, 206 S.W.3d at 597, 601. Thus, we overrule appellant's second, third, and fourth issues.

## IV.    CONCLUSION

Accordingly, because the State adequately established that police had reasonable suspicion to detain appellant for DWI, and that both probable cause and the exigent circumstance of hot pursuit existed to validate the officers' warrantless entry into the back building and appellant's arrest, the trial court did not err in denying appellant's motion to suppress. *See Amador*, 275 S.W.3d at 878. Therefore, we affirm the trial court's judgments.

/s/     Tracy Christopher
Justice

Panel consists of Justices Christopher, Jamison, and McCally.
Do Not Publish — TEX. R. APP. P. 47.2(b).

19