**Affirmed and Memorandum Opinion filed August 18, 2020.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-19-00659-CR

---

**MARSHALL ANDREW WASHINGTON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1609349**

---

## M E M O R A N D U M   O P I N I O N

Appellant Marshall Andrew Washington appeals his conviction for the third-degree felony offense of driving while intoxicated.[1]  Appellant presents three issues.  In his first two issues, he argues that the trial court erroneously denied his motion to suppress evidence of his initial detention, search, and arrest because he was detained without reasonable suspicion and he was arrested without probable

---

[1] Tex. Penal Code §§ 49.04, 49.09(b).

cause. We overrule these issues because the trial court reasonably could conclude from the evidence that law enforcement possessed both reasonable suspicion and probable cause when detaining and arresting appellant.

In his third issue, appellant contends that the trial court erred in denying his motion to suppress all evidence relating to a blood draw because the affidavit supporting the blood-draw warrant included material misstatements, and, excluding those misstatements, the affidavit does not support probable cause to issue the warrant. We overrule appellant's third issue because, even after omitting the challenged statements, the affidavit contained a sufficient factual basis to support a finding of probable cause that evidence of intoxication would be found in a search of appellant's blood.

We affirm the trial court's judgment.

### Background

Houston Police Department ("HPD") Officer Javier Leon, when off-duty on weekends, worked a second job as security at a car wash. One afternoon, a car wash employee alerted Officer Leon to a vehicle at the car wash entrance that had come off the automated tracks and told the officer that the driver may be drunk. Officer Leon saw a car unsuccessfully trying to back away from the automated car wash tracks, and he began walking toward the car. As he approached, Officer Leon saw the "vehicle somehow sliding sideways, which made [him] think that somehow the vehicle was hitting on top of the metal track because [he] saw the metal track and [he] saw the vehicle rocking sideways." The car wash employees guided other cars away so the driver could back up his vehicle. In backing up, the driver "almost crash[ed]" into the car behind him but stopped when the rear car honked.

2

Officer Leon approached the driver's window. The driver, whom Officer Leon identified as appellant, rolled the window down to speak to the officer. As Officer Leon testified, he "noticed the slurred speech in his voice and the bloodshot eyes, and [Officer Leon] could smell the alcohol coming from inside the vehicle." Officer Leon immediately thought the driver was intoxicated, so he instructed appellant to turn off the engine and exit the vehicle. As appellant complied, he stumbled and was not able to keep his balance. Officer Leon saw a clear glass inside the car, which was "cold and sweaty" and which the officer assumed was an alcoholic beverage.

Officer Leon requested another unit to respond to the scene. While waiting for the backup unit to arrive, Officer Leon led appellant to a customer seating area. Appellant "was very apologetic" and said "he knew he made a mistake." Appellant asked Officer Leon to let him go and if he was not allowed to go, appellant "was going to have problems at work and with his license." Although appellant initially denied having anything to drink, he later admitted to Officer Leon that "he'd had one beer or one drink."

HPD Officers Jesus Martinez and Tyler Sigue arrived on the scene. Officer Leon "told [Officer Martinez] the facts of [his] investigation, the reason why [Officer Leon] pulled the suspect away from his vehicle." Officer Martinez observed that appellant had slurred speech, bloodshot eyes, and a smell of alcohol coming from his breath. According to Officer Martinez, appellant also had difficulty walking and keeping his balance.

At that time, Officer Sigue handcuffed appellant and placed him in the patrol car. Officers Martinez and Sigue then transported appellant to the Southeast Intox station and obtained a warrant to draw appellant's blood. Although appellant was

3

extremely uncooperative, officers eventually collected a sample of appellant's blood.

A Harris County grand jury indicted appellant on the charge of driving while intoxicated ("DWI"). The indictment also alleged two prior misdemeanor DWI convictions and one prior felony DWI conviction.

Appellant moved to suppress evidence relating to: (1) his detention, search, and arrest; and (2) the testimony of police officers concerning statements appellant made while detained or under arrest. According to appellant, he was illegally detained and unlawfully arrested and therefore any evidence obtained during or after his detention or arrest should be suppressed. Appellant also filed a *Franks*[2] motion, in which he argued that Officer Sigue misrepresented material facts in the affidavit submitted to obtain a blood-draw warrant and that, absent the misstatements, no probable cause justified the warrant. The trial court denied both motions.

Appellant then pleaded guilty and admitted that he had three prior DWI convictions. The trial court sentenced appellant to ten years in prison and imposed a $300 fine, but the judge suspended the sentence and placed appellant on community supervision for four years.

Appellant timely appealed and challenges the trial court's rulings on both motions (the "Motion to Suppress" and the "*Franks* Motion").

**Analysis**

**A.    Motion to Suppress**

Appellant's first two issues concern the trial court's denial of appellant's Motion to Suppress. We review a trial court's ruling on a motion to suppress

---

[2] *Franks v. Delaware*, 438 U.S. 154, 171 (1978).

4

under a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We afford almost total deference to the trial court's determination of historical facts, provided that those determinations are supported by the record. *Id.*; *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011). We review de novo the trial court's application of law to those facts. *Valtierra*, 310 S.W.3d at 447.

In a suppression hearing, the trial court is the sole trier of fact and judge of witnesses' credibility and the weight afforded their testimony. *Id.*; *Smith v. State*, 491 S.W.3d 864, 870 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). When, as in this case, the trial court does not make formal findings of fact, we will uphold the trial court's ruling on any theory of law applicable to the case, and we will presume the trial court made implicit findings in support of its ruling if the record supports those findings. *Wiltz v. State*, 595 S.W.3d 930, 933 (Tex. App.—Houston [14th Dist.] 2020, pet. filed).

1.  *Evidence supports the trial court's implied ruling that the officer had reasonable suspicion to detain appellant.*

In his first issue, appellant contends that he was illegally detained because Officer Leon lacked reasonable suspicion that a crime had been or was being committed and that all evidence obtained after that point in time should be suppressed.[3] We disagree.

The Fourth Amendment prohibits unreasonable searches and seizures by the government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). In such cases, "the Fourth Amendment is satisfied if the officer's

---

[3] According to appellant, he was "detained" once Officer Leon told him to turn off his vehicle and to give the officer his car keys.

action is supported by reasonable suspicion to believe that criminal activity 'may be afoot.'" *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). "Reasonable suspicion to detain a person exists when a police officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 36 (Tex. Crim. App. 2017) (internal quotation omitted). This is "an objective standard that disregards the actual subjective intent of the arresting officer and looks, instead, to whether there was an objectively justifiable basis for the detention." *Wade v. State*, 422 S.W.3d 661, 668 (Tex. Crim. App. 2013).

In assessing whether reasonable suspicion exists, a reviewing court may take into account an officer's ability to "draw on [his] own experience and specialized training to make inferences from and deductions about the cumulative information available to [him] that 'might well elude an untrained person.'" *Arvizu*, 534 U.S. at 273 (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)); *see also Curtis v. State*, 238 S.W.3d 376, 379 (Tex. Crim. App. 2007) (reasonable-suspicion determination is made by considering the totality of the circumstances). We must give due weight to factual inferences drawn by local judges and law enforcement officers. *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *Ramirez-Tamayo*, 537 S.W.3d at 36.

Officer Leon testified that the following facts occurred before appellant was detained: Officer Leon was alerted to a driver having trouble entering the car wash; appellant nearly crashed into the car behind him when backing away from the entrance; appellant rolled down his car window and spoke to Officer Leon; Officer Leon heard appellant slurring his speech; Officer Leon saw appellant's

6

bloodshot eyes; and Officer Leon detected a moderately strong odor of alcohol coming from inside appellant's car.

Based on these facts, the trial court reasonably could have concluded that Officer Leon developed specific, articulable facts that supported detention for further investigation. *See Haas v. State*, 172 S.W.3d 42, 52 (Tex. App.—Waco 2005, pet. ref'd) (explaining that reasonable suspicion for investigative detention may develop during initial encounter with police officer); *Mohmed v. State*, 977 S.W.2d 624, 628 (Tex. App.—Fort Worth 1998, pet. ref'd). Officer Leon's observation of appellant's demeanor, specifically his bloodshot eyes and slurred speech, coupled with an odor of alcohol emanating from appellant's car, is more than sufficient to justify detaining appellant to further investigate a possible DWI offense. *E.g.*, *State v. Woodard*, 341 S.W.3d 404, 414 (Tex. Crim. App. 2011) (among other evidence, officer's observation that appellant smelled of alcohol, staggered when walking, and had bloodshot, glazed eyes was arguably sufficient to provide probable cause to arrest appellant for DWI and "certainly provided [the officer] with reasonable suspicion to detain [appellant]"); *Gonzalez v. State*, No. 08-14-00203-CR, 2017 WL 2464691, at *3-4 (Tex. App.—El Paso June 7, 2017, no pet.) (mem. op., not designated for publication) (appellant's strong odor of alcohol, slurred speech, lack of balance, and bloodshot eyes provided officer with reasonable suspicion to detain appellant for DWI after car crash); *State v. Priddy*, 321 S.W.3d 82, 88 (Tex. App.—Fort Worth 2010, pet. ref'd) (officer who observed that appellant had glazed and bloodshot eyes and smelled of alcoholic beverages had reasonable suspicion that appellant had been driving while intoxicated).

Viewing the evidence in the light most favorable to the trial court's ruling, the trial court did not err in denying appellant's Motion to Suppress on the basis that Officer Leon illegally detained him. We overrule appellant's first issue.

2.	*Evidence supports the trial court's implied ruling that the officers had probable cause to arrest appellant.*

In his second issue, appellant argues that he was unlawfully arrested because the police officers lacked probable cause at that time to believe that appellant had committed the offense of DWI and that all evidence obtained after his arrest should be suppressed.  For purposes of our analysis, we will accept appellant's contention that he was arrested when Office Sigue handcuffed appellant and placed him in the patrol car.

Probable cause for a warrantless arrest requires a police officer have a reasonable belief that, based on the facts and circumstances within the officer's personal knowledge or of which the officer has reasonably trustworthy information, an offense has been or is being committed.  *See Torres v. State*, 182 S.W.3d 899, 901-02 (Tex. Crim. App. 2005); *Smith v. State*, 491 S.W.3d 864, 870 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).  The test for probable cause is objective, *see Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009), and must be based on specific, articulable facts rather than the officer's mere opinion.  *Torres*, 182 S.W.3d at 902.  We use the "totality of the circumstances" test to determine whether probable cause existed for a warrantless arrest.  *Id.*

In addition to observing the signs of intoxication discussed above, Officer Leon testified to the following facts.  Appellant stumbled upon exiting his car.  Appellant stated that he had made a mistake and admitted that he had had "one beer or one drink."  Officer Leon then requested backup and Officers Martinez and Sigue arrived.  Officer Leon explained what had happened to Officers Martinez and Sigue.  The first thing Officer Martinez noticed was appellant's slurred speech, and Officer Martinez could smell alcohol on appellant's breath.  Officer Sigue "could smell a strong odor of an alcoholic beverage coming from [appellant's]

8

breath" and had to "give [appellant] multiple verbal commands to sit down." Officer Sigue handcuffed appellant and placed him in the officers' patrol car.

From this testimony, the trial court could have concluded that the officers had formed a reasonable belief, based on the facts and circumstances within the officers' knowledge or of which the officers had reasonably trustworthy information, that appellant had committed the offense of DWI. *See, e.g.*, *LeCourias v. State*, 341 S.W.3d 483, 489 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (holding probable cause existed when witness informed 911 dispatcher of defendant's erratic driving and defendant's performance on the field-sobriety tests was "dismal"); *Banda v. State*, 317 S.W.3d 903, 907, 910-11 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding officer possessed probable cause based on information provided by a witness who observed defendant's erratic driving and the officer's observation of defendant's slurred speech and strong odor of alcohol); *Chilman v. State*, 22 S.W.3d 50, 56 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (finding probable cause to believe defendant had been driving while intoxicated based on slurred speech, bloodshot eyes, odor of alcohol on breath, and evasiveness to questions); *Reynolds v. State*, 902 S.W.2d 558, 560 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd) (finding probable cause of public intoxication based on defendant's slurred speech, bloodshot eyes, odor of alcoholic beverage, and unstable balance).

Viewing the evidence in the light most favorable to the trial court's ruling, the trial court did not err in denying appellant's Motion to Suppress on the basis that he was arrested without probable cause. We overrule appellant's second issue.

**B.** *Franks* **Motion**

Based on Officer Sigue's affidavit, a magistrate issued a search warrant to draw appellant's blood. In his third issue, appellant argues that Officer Sigue made

several material misstatements in the affidavit and that, excising those false statements, the remainder of the affidavit is insufficient to establish probable cause, and the trial court should have suppressed the blood-draw warrant and results.

The Fourth Amendment protects individuals against unreasonable searches and seizures. U.S. Const. amend IV. The non-consensual extraction of blood implicates privacy rights and falls within the protections of the Fourth Amendment. *Sanchez v. State*, 365 S.W.3d 681, 684 (Tex. Crim. App. 2012). Although a blood draw constitutes a search under the Fourth Amendment, the Constitution will not be offended if the draw occurs pursuant to a valid search warrant. *Id.*

A search warrant to extract blood from a person who the police believe to have committed an intoxication offense must be based on probable cause that evidence of that offense will be found through the execution of the search warrant. *Hyland v. State*, 574 S.W.3d 904, 910 (Tex. Crim. App. 2019) (citing U.S. Const. amend. IV; Tex. Const. art. I, § 9; *Sanchez*, 365 S.W.3d at 684). Probable cause exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a person of reasonable prudence to believe that the instrumentality of a crime or evidence pertaining to a crime will be found. *See id.* In determining whether probable cause exists to support the issuance of a search warrant, the magistrate to whom the probable cause affidavit is presented is confined to considering the four corners of the search warrant affidavit, as well as to logical inferences the magistrate might draw based on the facts contained in the affidavit. *Id.*; *see State v. Elrod*, 538 S.W.3d 551, 554 (Tex. Crim. App. 2017). The determination of whether probable cause exists is a "totality of the circumstances" inquiry, based on the magistrate's reasonable reading of the

10

affidavit, but the magistrate may not act as a mere "rubber stamp." *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012).

Generally, a reviewing court begins with a presumption of validity regarding a magistrate's determination that a search warrant affidavit supports a finding of probable cause, *see Franks v. Delaware*, 438 U.S. 154, 171 (1978), and we will "view the magistrate's decision to issue the warrant with great deference." *Jones v. State*, 364 S.W.3d 854, 857 (Tex. Crim. App. 2012).

But this presumption of validity may be overcome if the defendant can show the presence of false statements in the search warrant affidavit that were either made deliberately or with reckless disregard for the truth. *Franks*, 438 U.S. at 171. Such statements must be purged from the affidavit, and it is then up to the reviewing judge to determine whether probable cause exists absent the excised statements. *Id.* at 171-72. When offending portions of a search warrant affidavit have been excised and a reviewing court re-examines the balance of the affidavit, the reviewing court should no longer give deference to the magistrate's initial probable cause determination because the reviewing court is now examining a new, different affidavit. *McClintock v. State*, 444 S.W.3d 15, 19 (Tex. Crim. App. 2014). The question for the reviewing court becomes the same as it would be for a magistrate conducting an initial review of a search warrant affidavit: whether the remaining statements in the affidavit establish probable cause. In other words, there is no heightened legal standard for determining the existence of probable cause when a reviewing court assesses the facts remaining in an excised search warrant affidavit. *Hyland*, 574 S.W.3d at 912-13. To answer the inquiry, we still read the purged affidavit under a totality of the circumstances approach. *State v. Le*, 463 S.W.3d 872, 877 (Tex. Crim. App. 2015).

11

In his affidavit, Officer Sigue testified that he formed an opinion that appellant was intoxicated and that a blood sample would provide evidence of appellant's state of intoxication. Officer Sigue recounted Officer Leon's version of events at the car wash, as well as Officer Sigue's personal observations of appellant's physical state and demeanor.

In the *Franks* Motion, appellant argued that Officer Sigue's affidavit contained material misstatements and that the remainder of the affidavit was insufficient to support a probable cause finding. According to appellant, the following affidavit statements are deliberately or recklessly false:

(1) Officer Sigue completed the National Highway and Traffic Safety Administration course on standard field sobriety tests;

(2) Officer Sigue has much experience with DWI investigations as an officer;

(3) Officer Sigue has confidence and familiarity with scientific detection methods and that those methods supported his observations regarding appellant's impairment;

(4) appellant had unsteady balance;

(5) appellant had slurred speech;

(6) Officer Sigue asked appellant to perform field sobriety tests at the scene;

(7) appellant refused to perform field sobriety tests at the scene; and

(8) Officer Sigue was aware that a person's blood can be drawn and that he had done so on many occasions.

As support for his contention that these assertions are misrepresentations that go beyond mere negligence, appellant points to Officer Sigue's testimony at the *Franks* hearing that he had not "done a lot of DWI [investigations] but . . . had done some"—specifically, "two to three"—at the time of his encounter with appellant. Officer Sigue also testified that he misstated the chronological order of events in his affidavit. Specifically, the affidavit indicated that Officer Sigue asked

12

appellant to perform field sobriety tests at the car wash, when Officer Sigue, in fact, did not make the request until appellant was at the Southeast Intox station.

On appeal, appellant does not direct us to any testimony establishing the falsity of the listed assertions other than those stated in items (2) and part of (6), above. We will assume for argument's sake not only that Officer Sigue misstated both the extent of his relevant experience and the timing of his request for appellant to perform field sobriety tests, but also that these misstatements were made deliberately or recklessly and were material to the finding of probable cause. *See Franks*, 438 U.S. at 171. The trial court therefore should have excised those statements from the affidavit, and the record indicates that the judge appropriately did so.

We now turn to the ultimate question: did the facts remaining in Officer Sigue's affidavit support a finding of probable cause that evidence of DWI would be found through the execution of a blood-draw search warrant? Those remaining facts include: (1) Officer Leon was flagged down by an employee of the car wash regarding a vehicle that had come off the automated tracks in the car wash; (2) Officer Leon observed that appellant's vehicle was on, but it was stalled out on the automated tracks; (3) Officer Leon knocked on appellant's window, and when the window was rolled down, Officer Leon noticed multiple signs of intoxication; (4) Officer Sigue noticed the same signs of intoxication, namely a strong odor of alcohol on appellant's breath, red bloodshot eyes, slurred speech, and unsteady balance; (5) appellant admitted to consuming one beer and one shot of alcohol; and (6) a DWI technician offered appellant an opportunity at the Southeast Intox station to provide a breath or blood sample and appellant declined to provide a sample.

13

We conclude that these facts sufficed to support a finding of probable cause that evidence of intoxication would be found in a search of appellant's blood. *See Hyland*, 574 S.W.3d at 916; *Thom v. State*, 437 S.W.3d 556, 562 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Foley v. State*, 327 S.W.3d 907, 912 (Tex. App.—Corpus Christi 2010, pet. ref'd) (affidavit stating that defendant smelled strongly of alcohol, had red and glassy eyes, slurred speech, poor balance, and refused to provide breath or blood sample contained sufficient facts to support probable cause for requiring blood sample).

We hold that the trial court did not err in denying appellant's *Franks* Motion on the basis that the magistrate could not have found probable cause that evidence relevant to the offense of DWI would be found in a specimen of appellant's blood. We overrule appellant's third issue.

## Conclusion

We affirm the trial court's judgment.

/s/      Kevin Jewell
                Justice

Panel consists of Justices Christopher, Jewell, and Hassan.

Do Not Publish — Tex. R. App. P. 47.2(b).