# NO. 12-20-00053-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *SALVADOR ORTIZ, JR.,*<br>*APPELLANT* | § | *APPEAL FROM THE 114TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Salvador Ortiz, Jr. appeals from his conviction for possession of a controlled substance with intent to deliver. In a single issue, Appellant contends that the trial court erred in denying his motion to suppress evidence.

### BACKGROUND

On November 26, 2018, Tyler Police Department Officers Spencer McGregor and Tim Hutson were patrolling an area of north Tyler located at the intersection of highway 69 north and Loop 323 known as the "Four Corners." They observed a tan Ford Ranger driven by Appellant leaving a hotel known for drug trafficking. Officer McGregor recognized Appellant from a previous interaction in which he was suspected of drug use and sales. The officers observed Appellant initiate his turn signal and turn into a Valero gas station from the middle lane. Believing that Appellant failed to signal at the required distance and that the turn was illegal, they initiated a traffic stop. According to the officers, Appellant and his passenger, Jamod Campbell, seemed very nervous. Appellant was unable to confirm that there was no weapon in the vehicle. To ensure officer safety, backup was called and both men were removed from the vehicle and secured in handcuffs. A K9 officer was also requested. The K9 conducted a free air sniff of the vehicle and alerted. Upon searching the vehicle, Officer Hutson found a clear plastic

bag containing several smaller clear plastic bags that held several red plastic bags. The red bags contained a crystal-like substance, multi-colored pills, and a green leafy substance. Officer Hutson believed these substances to be methamphetamine, ecstasy, and marijuana. The officers also found a digital scale and pipes. A pistol was found in a bag wrapped in children's clothing behind the driver's seat. It was later determined that the vehicle contained sixteen bags of methamphetamine weighing 5.5 grams, four bags of marijuana weighing 3.9 grams, and eight bags of ecstasy weighing 5.2 grams.

Appellant was arrested and charged by indictment with possession of a controlled substance, methamphetamine, in an amount more than four grams but less than 200 grams, with intent to deliver. Appellant moved to suppress evidence seized during the traffic stop. Following a hearing, the trial court denied Appellant's motion to suppress. Appellant entered a plea of "guilty" pursuant to an agreement, and the trial court sentenced him to ten years imprisonment. This proceeding followed.

## MOTION TO SUPPRESS

In his sole issue, Appellant challenges the denial of his motion to suppress evidence seized during the traffic stop.

### Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). A trial court's decision to grant or deny a motion to suppress is generally reviewed under an abuse of discretion standard. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). We give almost total deference to a trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor, and we review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor. *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008). When ruling on a motion to suppress evidence, the trial court is the exclusive trier of fact and judge of the witnesses' credibility. *See Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). Accordingly, a trial court may choose to believe or disbelieve all or any part of a witness's testimony. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). Moreover, if the trial judge makes express findings of fact, we view the evidence in the light most favorable

to the trial judge's ruling and determine whether the evidence supports those factual findings. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). When there is not an express finding on an issue, we infer implicit findings of fact that support the trial court's ruling as long as those findings are supported by the record. *See id.*

The prevailing party is entitled to "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011). We review the trial court's legal conclusions de novo and uphold the ruling so long as it is supported by the record and correct under any legal theory applicable to the case. *State v. Iduarte*, 268 S.W.3d 544, 548 (Tex. Crim. App. 2008); *Banda v. State*, 317 S.W.3d 903, 907–08 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

## Applicable Law

To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador v. State*, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007); *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App. 2009). A defendant can satisfy this burden by establishing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672.

The burden then shifts to the State to establish that the seizure was reasonable. *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). An objective standard is used when determining if the officer had a reasonable suspicion. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). This standard is whether the officer has "specific, articulable facts that, combined with rational inferences from those facts, would lead him to conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Id.* This test also includes the totality of the circumstances. *Id.*

A police officer may stop and detain a motorist who commits a traffic violation within the officer's view. *See Whren v. United States*, 517 U.S. 806, 810, 116 S. Ct. 1769, 1772, 135 L.Ed.2d 89 (1996); *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992). In addition, an officer may conduct a temporary detention if the officer has reasonable suspicion to believe that a person is violating the law. *See Ford*, 158 S.W.3d at 492. Reasonable suspicion is dependent upon both the content of the information possessed by the police and its degree of

reliability.  *See Alabama v. White*, 496 U.S. 325, 330, 110 S. Ct. 2412, 2416–17, 110 L.Ed.2d 301 (1990); *Walter v. State*, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000).

An operator may not turn the vehicle to enter a private road or driveway, otherwise turn the vehicle from a direct course, or move right or left on a roadway unless movement can be made safely.  TEX. TRANSP. CODE ANN. § 545.103 (West 2011).  In addition, the Texas Transportation Code prescribes the use of turn signals.  An operator shall use the signal authorized by Section 545.103 to indicate an intention to turn, change lanes or start from a parked position; and an operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement of the vehicle before the turn.  *Id.* § 545.104(a), (b) (West 2011).  Section 545.106 requires operators to give a turn signal by either using the hand and arm or lighting the signal lamps approved by the Department of Public Safety.  *Id.* § 545.106(a) (West 2011).

## Analysis

Officer McGregor testified that he and Officer Hutson were patrolling an area of Tyler known for drug activity called "Four Corners."  The officers observed a tan Ford Ranger exit the parking lot of a hotel known for drug trafficking.  Officer McGregor testified that they eventually conducted a traffic stop for the driver's failure to signal the required distance.  He stated that it appeared Appellant signaled his turn closer than 100 feet before turning.  At the time, Officer McGregor also believed that Appellant's turning from the middle lane constituted a traffic offense; however, he testified that it is only an offense if done in an unsafe manner.  Officer McGregor further testified that, prior to the hearing, an investigation of distances via Google Maps revealed that Appellant actually signaled more than 100 feet before turning.  However, in real time, he believed the signaling occurred late.

Officer Hutson testified that he is assigned to the Tyler Police Department's "bicycle team," which is a uniformed street crimes unit specializing in narcotics trafficking, gangs, prostitution, and human trafficking.  On the day of the arrest, Officer Hutson was training Officer McGregor.  The two officers were providing extra patrol for the area known as the "Four Corners," a high crime area of Tyler.  They observed a tan Ford Ranger leave the Royal Inn and proceed on Loop 323.  The vehicle eventually signaled and turned from the middle lane into a Valero gas station.  Officer Hutson testified that the distance between the moment Appellant activated his turn signal to the point he made his turn appeared to be less than 100 feet.  At the

time of the incident, Officer Hutson estimated the distance to be between seventy-five and eighty feet. Officer Hutson further testified that in preparation for the hearing, he met with the prosecutor and they measured the distance using Google Maps. The locations placed in Google Maps estimated that the actual distance between Appellant activating his turn signal and making his turn were right at or more than 100 feet. However, he expressed his inability to tell the exact distance with the naked eye while traveling in a moving vehicle. Officer Hutson stated that he believed the turn signal was initiated untimely when he decided to make the traffic stop. He further admitted that he initially believed turning from the center lane was an offense, but he later understood that doing so is acceptable as long as it is not at a roadway intersection.

Appellant's witness, Richard Hardin testified that he watched the officers' dashcam video and observed when Appellant initiated his turn signal.[1] He went to the scene and marked the location with green paint. Hardin testified that he used a roller wheel, i.e., a "Lufkin Measuring Device" to measure from the green mark to the "usable turn-in point" for the Valero. The distance measured 173 feet. Hardin testified that he measured the distance three times to confirm the distance.

The dashcam video was also admitted into evidence and played for the trial court. At the conclusion of the hearing, the trial court denied the motion to suppress, stating:

> Very unique situation to be able to watch it in realtime. And I will state for the record, as I watched it in realtime before we had testimony, it appeared to be within 100 feet, just -- just watching it in realtime.
>
> I think factually the record is clear that it was more than 100 feet. I don't think there's a legitimate factual dispute on that. And I make that finding.
>
> However, I also make a finding that the officers acted reasonably based on what they observed that night. And that's the standard as I understand it, what they observed in realtime.
>
> So I'm going to overrule the Motion to Suppress. I don't think there's a factual dispute to get to the jury on this issue, this limited issue.

Appellant argues that because the distance from initiating his turn signal actually exceeded 100 feet before his turn, the officers lacked reasonable suspicion for the traffic stop and any resulting evidence should be suppressed. However, to justify the stop, it is not necessary to show that Appellant actually committed a traffic violation; it is sufficient to show that the

---

[1] Hardin's occupation is not identified in his testimony or his report, and he did not testify as an expert.

officers reasonably believed a violation was in progress. ***Green v. State***, 93 S.W.3d 541, 545 (Tex. App.—Texarkana 2002, pet. ref'd); ***Garcia v. State***, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001); ***Powell v. State***, 5 S.W.3d 369, 377 (Tex. App.—Texarkana 1999, pet. ref'd) (citing ***Drago v State***, 553 S.W.2d 375, 377-78 (Tex. Crim. App. 1992)). The evidence demonstrates that the officers believed Appellant failed to signal 100 feet before turning. In fact, the trial court, after viewing the dashcam video, observed that it also appeared to her that the turn signal was initiated late. As a result, the record contains sufficient evidence from which the trial court could reasonably determine that the stop was based on reasonable suspicion that a traffic violation was in progress. *See* TEX. TRANSP. CODE ANN. § 545.104; ***Green***, 93 S.W.3d at 545. Viewing the evidence in the light most favorable to the trial court's ruling, we hold that the trial court did not abuse its discretion in denying the motion to suppress. Appellant's sole issue is overruled.

### DISPOSITION

Having overruled Appellant's sole issue, we ***affirm*** the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered October 30, 2020.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**OCTOBER 30, 2020**

**NO. 12-20-00053-CR**

**SALVADOR ORTIZ, JR.,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 114th District Court

of Smith County, Texas (Tr.Ct.No. 114-0112-19)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*