# NO. 12-23-00103-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *APRIL HOSKIN SILVA, APPELLANT* | § | *APPEAL FROM THE 7TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS, APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Appellant, April Hoskin Silva, challenges her conviction for possession of a controlled substance. In one issue, she argues that the trial court erred by denying her motion to suppress evidence. We affirm.

### BACKGROUND

At approximately 1:00 p.m. on June 10, 2020, Sergeant Robert Garcia of the Smith County Sheriff's Department observed a gold Chevrolet Impala park in front of a tire shop located on State Highway 155 in Smith County, Texas. The driver, Appellant, left the car, approached the building, and walked around before returning to the vehicle and approaching the exit from the tire shop parking lot onto State Highway 155. However, Appellant paused at the exit rather than turning onto the highway. Garcia subsequently parked his patrol car on the shoulder of the road, approached Appellant's vehicle, and initiated a conversation with her. Garcia was observing the tire shop that day because he received a report from a fellow law enforcement officer of narcotics activity taking place at the business. He decided to approach Appellant's vehicle because he found it odd that the vehicle drove toward the road as if to leave the parking lot, but then sat there for an "extended amount of time." Garcia turned on the rear lights of his patrol vehicle for traffic safety, to prevent anyone from hitting the vehicle, but did not activate any other lights. He did not issue any commands when he approached, but only

"walked up and said hello" through the open car window. When asked to produce her identification, Appellant showed Garcia a state identification card rather than a driver's license. Upon request, Appellant handed the ID card to Garcia. He stepped away to give Appellant's information to dispatch.

When Garcia returned, Appellant began explaining she was at the business to buy a tire because one of hers had a "bad belt," but "James" was not present, so she left him a note on the door. She stated that she drove to the shop from Rhones Quarter Road, a location Garcia knew was a "bit of a drive" away. Appellant offered to show Garcia text messages about why she was at the shop. The messages did not mention a tire, but a plug. Appellant explained that the plug was for an air conditioner, but Garcia was aware from his law enforcement and narcotics investigation experience that a "plug" could also refer to a drug dealer or drugs. Appellant then told Garcia that she already had a spare tire with her, which he found strange.

Garcia requested Appellant's consent to search her car by asking, "Would you mind if I search the vehicle?" Appellant did not verbally respond, but removed her seat belt, requested to take her beverage with her from the car, and exited the vehicle. Garcia understood this as Appellant expressing consent to the search. Garcia then called for another deputy to come to the scene for the search; while waiting for backup, he continued engaging in "casual conversation" with Appellant. When he mentioned to her that he was investigating the location because of suspected narcotics sales, she responded, "I didn't know James was doing [that] here." At no time did Appellant say that she wanted to leave or express any concern about the length of the wait, but she did say aloud that Garcia was free to search the vehicle. When Deputy Brayden Barnes arrived, Garcia proceeded with the search. He located a loose razor blade and two butane torch lighters, which Appellant said she used to smoke cigarettes because they did not blow out in the wind. Garcia testified that lighters of this type are commonly used for smoking cigars, which Appellant denied, or for smoking methamphetamine using a pipe. He did not find anything else of interest in the vehicle.

Based on his past experience with narcotics, Garcia believed that Appellant could have been concealing contraband in her brassiere, so he asked Appellant to "shake [her] bra out," meaning to pull her bra away from her body so that anything hidden inside would fall down. He testified that he made this request because, even if he had consent to search Appellant's person, there were "issues" doing so because both deputies on the scene were male and the department

2

had no female deputies who could perform the search. Appellant initially misunderstood that Garcia was asking that she shake her breasts at him, but once Garcia explained his meaning, she grabbed the bottom of her bra but did not pull it away from her body. However, Garcia and Barnes observed an odd bulge in the area of Appellant's chest and asked Appellant several times to remove the object, explaining that she could be charged with a felony for tampering with evidence. Appellant's demeanor became defensive, and although she did not refuse, she initially did not comply. She informed Garcia that she would also be charged with a felony if she handed the object over; however, she ultimately removed a glass pipe, with methamphetamine residue thereon, from her bra. At that point, Barnes placed Appellant under arrest and the deputies asked her several times whether she had any other contraband on her person. Appellant eventually admitted having more contraband in her bra, so Deputy Barnes uncuffed one hand so she could retrieve a small clear bag containing methamphetamine. Deputy Barnes subsequently transported Appellant to jail, while Garcia inventoried Appellant's vehicle and waited for the tow truck to arrive.

Appellant was indicted for the offense of possession of a controlled substance – methamphetamine, in an amount less than one gram. Subsequently, she moved to suppress all evidence obtained during Garcia's initial interaction with her.

At the suppression hearing, in addition to testifying to the above series of events, Garcia stated he believed the tire shop was closed on June 10 because a certain roll-up door was closed, but did not confirm whether it was actually closed. He did not observe Appellant do anything illegal before he initially approached her but did not believe his patrol vehicle was blocking her from leaving the parking lot, noting that there was another exit she could have used if she wished to drive away. During the encounter, Appellant told him that she had a prior conviction for manufacture and delivery of narcotics. Garcia testified that Appellant was not detained until approximately eighteen minutes and forty-six seconds into the interaction, at the point when she stated that she would be charged with a felony if she gave the deputies the object in her bra. He further stated that he did not check whether Appellant left a note on the door of the business as she stated, because he did not think it was relevant after locating the pipe and bag of methamphetamine.

The trial court denied Appellant's motion to suppress and issued findings of fact and conclusions of law. The court found that (1) Garcia's initial encounter with Appellant was

consensual, and that neither his request to see her identification or his retention thereof converted the consensual encounter to an investigative detention, (2) Garcia had reasonable suspicion to detain Appellant when she informed him about her previous criminal conviction for manufacture and delivery of narcotics, and (3) Appellant voluntarily and consensually handed over the meth pipe she had concealed in her bra.

Thereafter, Appellant pleaded "guilty" to the offense, and the trial court assessed punishment of twenty months' imprisonment. This appeal followed.


**MOTION TO SUPPRESS EVIDENCE**

In her sole issue, Appellant contends that the trial court abused its discretion by overruling her motion to suppress. Specifically, Appellant contends that (1) the officer's initial interaction with Appellant was not consensual, but an investigative detention, (2) Garcia lacked reasonable suspicion to detain her for the length of the interaction, and (3) Appellant did not consent to a search of her person or vehicle.

**Standard of Review**

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). A trial court's decision to grant or deny a motion to suppress is generally reviewed under an abuse of discretion standard. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). We give almost total deference to a trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor, and review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor. *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008). When deciding a motion to suppress evidence, a trial court is the exclusive trier of fact and judge of the witnesses' credibility. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). Accordingly, a trial court may choose to believe or disbelieve all or any part of a witness's testimony. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). Moreover, if the trial judge makes express findings of fact, we view the evidence in the light most favorable to the trial judge's ruling and determine whether the evidence supports those factual findings. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We review the trial court's legal conclusions de novo and uphold the ruling so long as it is supported by the record and

correct under any legal theory applicable to the case. *State v. Iduarte*, 268 S.W.3d 544, 548 (Tex. Crim. App. 2008); *Banda v. State*, 317 S.W.3d 903, 907–08 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

## Casual Encounter versus Investigative Detention

There are three distinct types of interactions between a police officer and a citizen: (1) encounters, (2) investigative detentions, and (3) arrests. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). In determining which category an interaction falls into, courts look at the totality of the circumstances. *Id.* "The test to determine whether a citizen has been detained is objective; the subjective intent or belief of the detainee or law enforcement is irrelevant." *Monjaras v. State*, 664 S.W.3d 921, 927 (Tex. Crim. App. 2022). An encounter takes place when an officer approaches a citizen in a public place to ask questions, and the citizen is willing to listen and voluntarily answers. *Crain*, 315 S.W.3d at 49. (citing *State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002)). Regardless of whether there has been any wrongdoing, in an encounter, officers may ask the individual general questions or ask to see and examine the individual's identification, so long as the officer does not indicate that compliance is required. *Florida v. Bostick*, 501 U.S. 429, 434-35, 111 S. Ct. 2382, 2386, 115 L. Ed. 2d 389 (1991). On the other hand, an investigative detention occurs when a person yields to the police officer's show of authority under a reasonable belief that he is not free to leave. *Crain*, 315 S.W.3d at 49 (citing *Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995)). When the court is conducting its determination of whether the interaction constituted an encounter or a detention, the court focuses on whether the officer conveyed a message that compliance with the officer's request was required. *Id*. The controlling question is whether the actions of the officer would have made a reasonable person feel that he was not free to decline the officer's request or otherwise terminate the encounter. *State v. Velasquez*, 994 S.W.2d 676, 679 (Tex. Crim. App. 1999). Examples of circumstances that might indicate a seizure include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *Id.* at 49–50 (citing *U.S. v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 497 (1980)).

In this case, the trial court found that Garcia's initial interaction with Appellant was a consensual encounter, and that neither his request to see her identification or his retention thereof

converted the consensual encounter to an investigative detention. The trial court specifically found that Garcia's testimony was credible, and we must defer to that determination. *See Maxwell*, 73 S.W.3d at 281.

There is no bright-line rule to determine when an encounter becomes a detention; courts must examine whether a reasonable person would have felt free to ignore the officer's request or end the encounter. *State v. Castleberry*, 332 S.W.3d 460, 466-67 (Tex. Crim. App. 2011). Garcia approached Appellant's unmoving vehicle on foot in an unenclosed area and initiated the encounter with a greeting through Appellant's open car window. He was the only officer present. *See Mendenhall*, 446 U.S. at 554 (considering presence of multiple officers threatening). The trial court could have reasonably found Garcia's tone, as heard in the body camera video, to be friendly and conversational, and not intended to order or compel compliance. *Id.* He testified that his vehicle was not blocking the entrance to the parking lot and did not block Appellant's view of traffic, and that there was another exit by which Appellant could have left the parking lot. *See Franks v. State*, 241 S.W.3d 135, 142 (Tex. App.—Austin 2007, pet. ref'd) (encounter consensual when officer's vehicle was not blocking appellant or preventing her from leaving). Garcia activated the rear lights of his patrol vehicle for traffic safety but did not activate any other lights or sirens. *See Martin v. State*, 104 S.W.3d 298, 301 (Tex. App—El Paso 2003, no pet.) (officers may activate emergency lights during consensual encounter for highway safety reasons). Garcia requested and examined Appellant's driver's license, although he did not immediately return it. *See Cole v. State*, No. 03-08-00045-CR, 2008 WL 3877714, at *4 (Tex. App.—Austin Aug. 20, 2008, no pet.) (mem. op., not designated for publication) (citing *Florida v. Royer*, 460 U.S. 491, 501, 103 S. Ct. 1319, 75 L.Ed.2d 229 (1983)) (officer asking for and examining driver's license does not transform an encounter into a detention). He then conversationally questioned Appellant about the reason for her visit to the tire shop and her personal history and requested consent to search her car. *Eldred v. State*, No. 14-06-00231-CR, 2007 WL 2265748, at *3 (Tex. App.—Houston [14th Dist.] Aug. 9, 2007, no pet.) (mem. op., not designated for publication) (citing *Hunter v. State*, 955 S.W.2d 102, 106 (Tex. Crim. App. 1997)) (questioning and requesting consent to search do not themselves render an encounter a detention). And, since Appellant consented to the search of her vehicle, Garcia's completing the search did not convert the encounter into a detention.

Viewing the totality of the evidence in the light most favorable to the trial court's ruling, Sergeant Garcia's initial interaction with Appellant did not constitute such a show of authority as to indicate to a reasonable person that she would not be free to terminate the encounter. *See Crain*, 315 S.W.3d at 49. We therefore conclude that the initial interaction between Sergeant Garcia and Appellant was a consensual encounter.

**Reasonable Suspicion**

A consensual encounter between a citizen and a law enforcement officer may escalate into an investigative detention if the officer's conduct indicates that ignoring the officer's request or terminating the encounter is no longer an option. *Monjaras*, 664 S.W.3d at 929. A law enforcement officer conducts a lawful temporary detention when he has reasonable suspicion to believe that an individual is violating the law. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Reasonable suspicion does not rise to the level of preponderance of the evidence and need not rule out the possibility of innocent conduct. *Navarette v. California*, 572 U.S. 393, 403, 134 S. Ct. 1683, 1691, 188 L. Ed. 2d 680 (2014); *York v. State*, 342 S.W.3d 528, 543 n.86 (Tex. Crim. App. 2011) (reasonable suspicion for investigative detention is lower standard than probable cause, which is lower standard than preponderance of the evidence). Indeed, the "principal function" of an officer's investigation is to resolve the ambiguity and determine whether the activity is legal or illegal. *Woods v. State*, 956 S.W.2d 33, 37 (Tex. Crim. App. 1997). An objective standard is used when determining if the officer had reasonable suspicion. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). This standard is whether the officer has "specific, articulable facts that, combined with rational inferences from those facts, would lead him to conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Id.* This test also includes the totality of the circumstances. *Id.*

Articulable facts must amount to "more than a mere inarticulate hunch, suspicion, or good faith suspicion that a crime was in progress." The existence of reasonable suspicion turns on an objective assessment of the detaining officer's actions in light of the facts and circumstances confronting him at the time, and not on the officer's state of mind. *See United States v. Knights*, 534 U.S. 112, 122, 122 S. Ct. 587, 593, 151 L. Ed. 2d 497 (2001); *Griffin v. State*, 215 S.W.3d 403, 409 (Tex. Crim. App. 2006). In assessing whether reasonable suspicion exists, a reviewing court may consider an officer's ability to draw on his own experience and specialized training to make inferences from and deductions about the cumulative information

7

available to him that might elude an untrained person. ***Ramirez-Tamayo v. State***, 537 S.W.3d 29, 36 (Tex. Crim. App. 2017).

The trial court did not make any findings as to exactly when Garcia's encounter with Appellant escalated into an investigative detention.[1] However, the trial court did conclude as a matter of law that Garcia had reasonable suspicion to detain Appellant approximately three minutes into the encounter, when she informed him about her previous criminal conviction for manufacture and delivery of narcotics.[2] The record shows that by this time, Garcia was also aware that (1) the tire shop was a site of suspected narcotics dealing, (2) the location Appellant stated she drove from (on a bad tire) was not in the immediate area, (3) Appellant admitted having a spare tire, (4) Appellant showed Garcia a text message stating that the shop owner had a "plug" for her, which in Garcia's knowledge and experience could reference a drug dealer or drugs, (5) Appellant contradicted her earlier statement by saying she was at the shop to pick up a plug for an air conditioning unit, and (6) Appellant stated she left a note on the door for the shop owner when she had his phone number and could have texted him instead.

The fact that a certain locale is known for its relation to criminal activity will not by itself give rise to reasonable suspicion for an investigative detention but is a factor that officers may take into account. ***Illinois v. Wardlow***, 528 U.S. 119, 124, 120 S. Ct. 673, 676, 145 L.Ed.2d 570 (2000). An individual's prior criminal record is similarly not dispositive of reasonable suspicion but may be considered. ***Hamal v. State***, 390 S.W.3d 302, 308 (Tex. Crim. App. 2012). Providing contradictory, confusing, or nonsensical responses to officer questions is yet another factor that can support a finding of reasonable suspicion. ***LeBlanc v. State***, 138 S.W.3d 603, 608 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (reasonable suspicion existed when individual's story was inconsistent with his actions or information discovered during detention); ***Estrada v.***

---

[1] As discussed *infra*, Appellant contends that her interaction with Garcia *began* as an investigative detention. Appellant appears to argue that Garcia unlawfully detained her because, at some unspecified point, he concluded "the investigation of the conduct that initiated the stop," and thereafter lacked reasonable suspicion to continue the initial detention. Neither does the State put forth any supposition as to exactly *when* the encounter escalated into a detention (although the interaction began consensually), only stating that Garcia "developed reasonable suspicion and then probable cause to arrest [Appellant] very quickly after making initial contact."

[2] On appeal, the State contends for the first time that Garcia had the reasonable suspicion necessary to detain Appellant when she could not produce a valid driver's license, because failure to produce a driver's license to an officer on request at minimum warrants a license check, and failure to possess a driver's license while operating a motor vehicle is an arrestable offense. *See* ***Villarreal v. State***, 631 S.W.3d 198, 207 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (officer had probable cause to arrest appellant (and therefore also reasonable suspicion for detention) because appellant did not possess a driver's license). Because this argument was not before the trial court at the time it denied Appellant's motion to suppress, we do not consider it on appeal. *See* Tex. R. App. P. 33.1(a).

***State***, 30 S.W.3d 599, 603 (Tex. App.—Austin 2000, pet. ref'd) (individual's confusing and contradictory statements contributed to reasonable suspicion); ***Ortiz v. State***, 930 S.W.2d 849, 856 (Tex. App.—Tyler 1996, no pet.) (reasonable suspicion supported when individual gave vague, confusing responses inconsistent with other statements).

Considering the totality of the circumstances and viewing the evidence in the light most favorable to the trial court's ruling, we conclude the trial court did not err when it concluded Sergeant Garcia had reasonable suspicion to detain Appellant at the time she disclosed her criminal history. We overrule this portion of Appellant's issue.

## Consent to Search

A warrantless search is "per se unreasonable subject only to specifically established and well-delineated exceptions." *See **Rayford v. State***, 125 S.W.3d 521, 528 (Tex. Crim. App. 2003). A search conducted with the consent of the suspect is one such exception, as long as it is voluntary (that is, given in the absence of duress or coercion, whether actual or implied). ***Id.***; ***State v. Weaver***, 349 S.W.3d 521, 526 (Tex. Crim. App. 2011). Voluntariness is determined by analyzing the totality of the circumstances of the situation from the view of an objectively reasonable person, without regard for the subjective thoughts or intents of either the officer or the citizen. ***Tucker v. State***, 369 S.W.3d 179, 185 (Tex. Crim. App. 2012) (citing ***Meekins v. State***, 340 S.W.3d 454, 458–59 (Tex. Crim. App. 2011)). In determining voluntariness, the ultimate question is whether the person's will has been overborne and his capacity for self-determination critically impaired, such that his consent to search must have been involuntary. ***Id.*** The voluntariness of a person's consent is a question of fact that the state must prove by clear and convincing evidence. ***Valtierra***, 310 S.W.3d at 448. A trial court's finding of voluntary consent is reviewed for abuse of discretion and must be accepted on appeal unless it is clearly erroneous. ***Meekins***, 340 S.W.3d at 460. Factors that tend to show coercion include, but are not limited to, an officer's display of a weapon, threats, promises, deception, physical touching, or a demanding tone of voice or language. ***Id.*** at 459. Other relevant factors include the age, education, and intelligence of the accused, the length of the detention, the repetitiveness of the questioning, and the use of physical punishment. ***Vasquez v. State***, 324 S.W.3d 912, 922 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). In general, the Constitution presumes that an actor is "invested with a vibrant sense of his own constitutional rights and will assert those rights when they are implicated." ***Carmouche***, 10 S.W.3d at 333.

Our review of the record shows that Appellant, as of June 10, 2020, was 53 years of age, and appeared coherent and aware during the encounter. The record does not provide proof of Appellant's education or intelligence; however, one may reasonably infer Appellant is a normal, average adult individual. The record also shows that neither Sergeant Garcia or Deputy Barnes displayed a weapon, touched Appellant before she retrieved the glass pipe, spoke in a harsh or loud tone, or used or threatened physical force. Again, less than twenty minutes elapsed from when Garcia first approached Appellant to when Barnes handcuffed her. All of these factors weigh in favor of a finding of voluntary consent and therefore support the trial court's ruling on that point.

Repeatedly asking for consent to search does not result in coercion, particularly when the person refuses to answer or is otherwise evasive in responding. *Meekins*, 340 S.W.3d at 464. Similarly, Garcia and Barnes asking Appellant several times to remove the suspected contraband from her bra, when she never verbally refused to do so but instead insisted that she had no contraband, does not rise to the level of official coercion. Rather, the record may be reasonably interpreted as indicating the deputies repeated the question simply to attain an unequivocal answer. *Hunter v. State*, 607 S.W.3d 894, 899 (Tex. App.—Amarillo 2020, no pet.).

Finally, in some cases, a law enforcement officer's retention of an individual's "necessary travel documents," including a driver's license or alien registration card, may weigh against a finding of voluntary consent; however, this factor alone does not establish compulsion. *Vasquez*, 324 S.W.3d at 922 (consent found although an officer held an individual's driver's license while asking for consent); *Pavon-Maldonado v. State*, No. 14-13-00944-CR, 2015 WL 1456523, at *9 (Tex. App.—Houston [14th Dist.] Mar. 26, 2015, no pet.) (mem. op., not designated for publication). Leaving aside that a state identification card is not necessarily an item required for a person to travel, as it is not the same as a driver's license, this factor is similarly not dispositive here, particularly because Garcia had already returned Appellant's identification card to her *before* he began questioning her about whether she concealed contraband in her bra.

Appellant argues that "[t]he deputy infused the encounter and issue with compulsion. The officer's framing of the issue militates in favor of a determination that Appellant's response was merely an acquiescence to an assertion of lawful authority." However, acquiescence to or compliance with a request by law enforcement personnel may still support a finding of consent,

10

particularly when, as here, there was no implication that Appellant could not decline.[3] *Meekins*, 340 S.W.3d at 464-65.

From the arguments and evidence presented at the suppression hearing, the trial judge made a reasonable ruling based upon the totality of the circumstances. The record does not show that Appellant's will had been overborne and her capacity for self-determination critically impaired when she handed Sergeant Garcia the glass pipe. We conclude that the trial court did not err by finding Appellant voluntary consented to the search. Consequently, we overrule this portion of Appellant's sole issue.

## Summation

We conclude that the trial court did not err in finding that (1) the interaction between Garcia and Appellant began as a consensual encounter, (2) Garcia had the reasonable suspicion requisite to conduct a lawful investigative detention of Appellant, and (3) Appellant gave voluntary consent for the search of her person. Accordingly, the trial court did not abuse its discretion in denying Appellant's motion to suppress.

### DISPOSITION

Having overruled Appellant's sole issue, we ***affirm*** the judgment of the trial court.

GREG NEELEY
Justice

Opinion delivered November 8, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

---

[3] The jurisprudence related to the concept of "mere acquiescence" stems from the United States Supreme Court's decision in ***Bumper v. North Carolina***, wherein the Court addressed a very particular fact pattern. 391 U.S. 543, 547–49, 88 S. Ct. 1788, 1792, 20 L.Ed.2d 797 (1968). A homeowner consented to a search of her home because a police officer told her that he had a warrant for the search. *Id.* at 391 U.S. at 546-47, 88 S. Ct. 1790-91. At the hearing on the defendant's motion to suppress, however, the prosecutor represented to the court that he did not rely upon a warrant to justify the search, but only upon the homeowner's consent. *Id.* at 391 U.S. at 546, 88 S. Ct. 1790. The Court found that the homeowner's consent could not have been voluntarily given, as the officer's statement that he had a warrant for the search "announce[d] in effect that the occupant ha[d] no right to resist the search." *Id.* at 391 U.S. at 550, 88 S. Ct. 1792; *see also* ***State v. Kelly***, 204 S.W.3d 808, 821 (Tex. Crim. App. 2006) (discussing application of ***Bumper*** to defendant's consent to blood draw).

11



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**NOVEMBER 8, 2023**

**NO. 12-23-00103-CR**

**APRIL HOSKIN SILVA,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 7th District Court

of Smith County, Texas (Tr.Ct.No. 007-0006-21)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*